Argued and submitted September 8, order of the circuit court affirmed
November 26, 2004

## STATE OF OREGON,
*Appellant,*

*v.*

## WILLIAM EUGENE MACK,
*Respondent.*

## (CC 03C52412; SC S51395)

101 P3d 349

Albin W. Norblad, Judge.

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause and filed the brief for appellant. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Rebecca A. Duncan, Chief Deputy Public Defender, Salem, argued the cause and filed the brief for respondent. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

KISTLER, J.

**KISTLER, J.**

The question that this case presents is whether the federal Confrontation Clause prohibits a Department of Human Services (DHS) caseworker from testifying to statements that a three-year-old child made to her during a police-directed interview. We hold that it does and affirm the trial court's order excluding that evidence.

The state charged defendant with murdering his girlfriend's two-year-old son Lucas. The autopsy revealed evidence of blunt force trauma to Lucas's head and face and described the cause of death as injuries consistent with smothering by facial compression. Lucas's three-year-old brother Shaydon was in the house when Lucas died. Keizer police asked a DHS caseworker Snyder to interview Shaydon. Snyder interviewed Shaydon twice. Both times, police officers were present and videotaped the interviews.

The first videotaped interview took place at the Keizer police station shortly after Lucas's death. Snyder explained that "the primary intent * * * during the first interview at the police department really was for law enforcement to be able to complete their investigation." Snyder initially understood that she would be present at the interview as a support for Shaydon, to answer questions about his needs, and to use her expertise interviewing children to facilitate the officers' interview. However, when the detective who began speaking with Shaydon found it difficult to "establish kind of a dialogue or rapport with [him]," Snyder assumed the primary role in questioning Shaydon about Lucas's death.[1]

Later, the officers asked Snyder to bring Shaydon to his family's home. It was the first time that Shaydon had been back in his home since his brother's death. As before, the officer videotaped Snyder's conversation with Shaydon. Snyder explained that children Shaydon's age "generally are kind of narcissistic; in that, you know, it's all about them and what they want to do at that moment." Snyder accordingly

---

[1] Snyder testified that she would have asked Shaydon the same questions even if the officers had not wanted to investigate Lucas's death.

would "play cards or color this picture or, you know, play telephone, or whatever it was that his—his kind of needs were at that moment." She testified, however, that "the art to [interviewing children] is then getting back to where—where you were headed."

Many of Shaydon's statements during the interview were inconsistent. However, Snyder elicited from him that, on the night Lucas died, defendant was angry with Lucas for crying and getting out of bed and that defendant knocked Lucas's crib over, hit him on the head, and rubbed him on the floor.

The state filed a motion *in limine* to determine whether Shaydon's statements were admissible under OEC 803(18a)(b).[2] Five days later, the United States Supreme Court issued its decision in *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004), which announced a new way of analyzing the federal Confrontation Clause. After receiving supplemental briefing on *Crawford*, the trial court held a pretrial evidentiary hearing. The trial court ruled that Shaydon was not competent to testify, that Shaydon's statements to Snyder were admissible under OEC 803(18a)(b), but that admitting those statements would violate the federal Confrontation Clause.

The trial court explained that *Crawford* prohibits admitting "testimonial" statements in a criminal case unless the defendant has an opportunity to cross-examine the declarant. The trial court found that Shaydon's statements were testimonial because a government officer, acting as an agent of the police, questioned Shaydon in a manner structured to obtain information for the state to use in prosecuting defendant. Because defendant had no opportunity to cross-examine Shaydon, the court held that the federal Confrontation Clause barred the admission of Shaydon's statements.

The state filed a pretrial appeal in this court. *See* ORS 138.060(2)(a) (authorizing pretrial appeals to this court

---

[2] OEC 803(18a)(b) provides a hearsay exception for statements reporting abuse if the declarant is unavailable and if the declarant's statements have sufficient indicia of reliability.

when trial courts suppress evidence in murder and aggravated murder cases); *State v. Koennecke*, 274 Or 169, 172-73, 545 P2d 127 (1976) (holding that statute authorizing appeals from "order[s] made prior to trial suppressing evidence" also applies to pretrial orders excluding evidence). In reviewing the trial court's ruling, we are bound by the trial court's factual findings but not by its legal conclusions. *State v. Pinnell*, 311 Or 98, 115, 806 P2d 110 (1991).

The issue on appeal is narrow. Defendant does not challenge the trial court's ruling that Shaydon's statements to Snyder are admissible under OEC 803(18a)(b), nor does he contend that the state confrontation clause bars their admission. Rather, relying solely on the Sixth Amendment Confrontation Clause, defendant argues that Shaydon's statements are testimonial and thus inadmissible.[3] Given the narrow focus of the parties' dispute, we depart from our normal course and begin with defendant's federal constitutional claim; that is, we examine whether defendant's Sixth Amendment right to confront the witnesses against him, as interpreted in *Crawford*, bars the admission of Shaydon's statements to Snyder.

In *Crawford*, the police questioned the defendant's wife about a homicide. 124 S Ct at 1357. The wife was not available to testify at trial, and the Washington Supreme Court ruled that her statements to the police were admissible as statements against penal interest. *Id.* at 1358. Following *Ohio v. Roberts*, 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980), the Washington Supreme Court also ruled that admitting those statements in the defendant's criminal trial did not violate his Sixth Amendment right to confront the witnesses against him. *Crawford*, 124 S Ct at 1358-59. The United States Supreme Court reversed and, in doing so, announced a different Confrontation Clause analysis than it had announced in *Roberts*.

The Court began its analysis in *Crawford* by recounting the history that preceded the adoption of the

---

[3] The Confrontation Clause of the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."

Confrontation Clause. The Court drew two inferences from that history.

> "First, the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused."

*Id.* at 1363. The Court explained that the text of the clause, consistently with its history, "reflects an especially acute concern with a specific type of out-of-court statement"—testimonial evidence. *Id.* at 1364. The Court noted that, although "various formulations" of "testimonial evidence" exist, it was not necessary to adopt any particular formulation to decide the case before it. Rather, the Court concluded that, under any formulation of the concept, *"ex parte* testimony at a preliminary hearing" qualifies as testimonial evidence and that, by extension, so do "[s]tatements taken by police officers in the course of interrogations."[4] *Id.*

In reaching the latter conclusion, the Court relied on the "striking resemblance" between the historical examples that gave rise to the Confrontation Clause and modern-day police interrogations. *Id.* The Court observed that, in the seventeenth and eighteenth centuries, the English justices of the peace "had an essentially investigative and prosecutorial function"—similar to the function that police officers perform today. *Id.* at 1365. The Court reasoned that "[t]he involvement of government officers in the production of testimonial evidence presents the same risk, whether the officers are police or justices of the peace." *Id.*

The Court drew a second inference from the historical record. It inferred that

> "the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination. The text of the Sixth Amendment does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts. Rather, the 'right . . . to be

---

[4] The Court used the term "interrogation" in its colloquial, not its formal, sense. *Crawford*, 124 S Ct at 1365 n 4.

confronted with the witnesses against him,' Amdt. 6, is most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time of the founding."

*Id.* (ellipsis in original). Although the Court reasoned that the Sixth Amendment incorporates those hearsay exceptions "established at the time of the founding," it also observed that "there is scant evidence that [those] exceptions were invoked to admit *testimonial* statements against the accused in a *criminal* case." *Id.* at 1367 (emphasis in original).[5] Applying those standards, the Court concluded that the statements that the defendant's wife made in response to police questioning were testimonial and that, in the absence of cross-examination, the federal Confrontation Clause barred their admission.

■       Under *Crawford*, the initial, and often dispositive, question is whether an out-of-court statement is "testimonial." If it is, the statement cannot be admitted in a criminal case unless (1) the defendant had or has the opportunity to cross-examine the declarant,[6] (2) the statement is not admitted for the truth of the matter asserted,[7] or (3) the statement comes within a small class of exceptions to the *Crawford* rule.[8] One difficulty in determining whether a statement is testimonial is that the Court, having made "testimonial evidence" a central piece of its Confrontation Clause analysis, declined to define that concept. *Id.* at 1364. It identified instead historical examples of testimonial statements and

---

[5] The Court noted that "[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy." *Crawford*, 124 S Ct at 1367.

[6] Under *Crawford*, the Confrontation Clause does not bar admission of a statement if the defendant had an opportunity to cross-examine the declarant when the statement was made, 124 S Ct at 1369, or, if not, has the opportunity to do so at trial, *id.* at 1369 n 9.

[7] The Court clarified that "[t]he Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 124 S Ct at 1369 n 9.

[8] *Crawford* endorsed one exception, the rule of forfeiture by wrongdoing, 124 S Ct at 1370, and noted the possibility that the exception for dying declarations also may apply to testimonial statements, *id.* at 1367 n 6.

left, for another day, the task of identifying which character-istics of those examples made the statements testimonial. *Id.* at 1364-65.

We need not go beyond the reasoning in *Crawford* to decide this case. Shaydon's statements to Snyder fell within the core class of testimonial evidence that *Crawford* identi-fied. There can be little doubt that, if the police officers had conducted these interviews with Shaydon, the resulting statements would be testimonial. Indeed, *Crawford* described an officer's interview of the four-year-old victim in *White v. Illinois*, 502 US 346, 349-51, 112 S Ct 736, 116 L Ed 2d 848 (1992), as eliciting testimonial evidence. 124 S Ct at 1368 n 8.[9] The only difference between this case and *White* is that a DHS worker, rather than an officer, conducted the interviews. The DHS worker, however, was serving as a proxy for the police. She took over the first interview when the interviewing officer was unable to establish a dialogue with Shaydon. She continued in that role in the second inter-view and elicited statements from Shaydon so that police offi-cers could videotape them for use in a criminal proceeding. Under *Crawford*, admitting Shaydon's statements to Snyder would violate the Confrontation Clause.

The state candidly acknowledges that other courts have held that statements similar to Shaydon's are testimo-nial.[10] The state, however, identifies three factors that, it con-tends, demonstrate that Shaydon's statements are not testi-monial. The state notes initially that, although Snyder was a

---

[9] In *White*, the state sought to admit statements that a four-year-old child made, at separate times, to her babysitter, her mother, an officer, a hospital nurse, and a doctor. The Court in *Crawford* referred only to the statements that the child made to the officer as testimonial.

[10] *See People v. Sisavath*, 118 Cal App 4th 1396, _____ P3d _____ , *rev den* (2004) (holding that child's statement to forensic interviewer was testimonial because reasonable person would expect it to be used prosecutorially); *People ex rel R.A.S.*, _____ Colo App _____ , _____ P3d _____ , No 03CA1209, WL 1351383 (June 17, 2004) (same); *People v. Vigil*, _____ Colo App _____ , _____ P3d _____ , No 02CA0833, WL 1352647 (June 17, 2004) (child's statements to doctor perform-ing "forensic sexual abuse examination" were testimonial because doctor elicited statements for purpose of prosecution); *State v. Courtney*, 682 NW2d 185 (Minn App), *rev allowed* (2004) (child's statements to child-protection worker were testi-monial because police were present and directing interview); *In re T.T.*, 815 NE2d 789 (Ill App), *rev allowed* (2004) (child's statements to police, child protective serv-ices agent, and doctor were testimonial to extent child accused and identified defendant because purpose was prosecutorial).

government official, she was not a police officer. The difficulty with the state's argument is that, as the trial court found, Snyder was acting as an agent for the police when she elicited the statements from Shaydon. Whatever the merits of the state's distinction, and we express no opinion on it, it is inapposite here.

The state also notes that Snyder's interview with Shaydon lacked the formality and solemnity that, it contends, characterize testimonial evidence. The *Crawford* Court, however, explained that statements made during a police interrogation constitute testimonial evidence, and it described the statements that an officer elicited from the four-year-old victim in *White* as testimonial evidence. Here, Snyder elicited statements from Shaydon at the request of the officers while they videotaped the interviews. Snyder structured the interviews in an age-appropriate way to elicit information from Shaydon relevant to the police investigation. We cannot say that this interrogation differs, in any meaningful way, from the police interrogations in *Crawford* or *White*.

Finally, the state argues that, in deciding whether Shaydon's statements were testimonial, we should focus on Shaydon's intent in making the statements. The state's argument is difficult to square with the reasoning in *Crawford*. As noted, the Court explained that "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." *Crawford*, 124 S Ct at 1363. The primary focus in *Crawford* was on the method by which government officials elicited out-of-court statements for use in criminal trials, not on the declarant's intent or purpose in making the statement.

To be sure, there may be situations in which the declarant's purpose in making a statement may bear on whether the statement is testimonial. An unsolicited statement presents one possible example. Emergency calls to government officials present another. We need not resolve those issues, however, to decide this case. Snyder's interviews with Shaydon are effectively indistinguishable from the *ex parte* examinations that *Crawford* places at the heart of the

Confrontation Clause protections. The trial court correctly ruled that the Sixth Amendment Confrontation Clause prohibits admitting Shaydon's statements to Snyder in defendant's criminal trial.

The order of the circuit court is affirmed.