Argued and submitted September 30, affirmed December 7, 2005, petition for review denied March 21, 2006 (340 Or 308)

## STATE OF OREGON,
*Respondent,*

*v.*

## JONATHAN E. NORMAN,
*Appellant.*

030343136; A122051

125 P3d 15

Ernest G. Lannet, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Linder and Wollheim, Judges.

EDMONDS, P. J.

### EDMONDS, P. J.

■       Defendant appeals a judgment of conviction for misdemeanor driving under the influence of intoxicants (DUII). ORS 813.010. On appeal, he assigns error to the admission into evidence of certifications of the accuracy of the Intoxilyzer machine that produced the test result also admitted into evidence. He argues that his confrontation rights under the state and federal constitutions were violated in light of recent Oregon Supreme Court holdings and the holding in *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004). We affirm.

The underlying facts are not in dispute. Defendant was stopped on February 15, 2003, after two police officers saw him driving after midnight with only his parking lights on. When defendant did not react to signals to activate his headlights, the officers eventually stopped him. Although one officer used the overhead lights on his police car and activated its siren twice, and although there were several safe places to stop, defendant continued driving for approximately four blocks. After defendant was stopped, the officers observed indicia of alcohol consumption and asked him to perform field sobriety tests. Defendant agreed, and, based on his performance of those tests, the officers determined that defendant was under the influence of intoxicants and placed him under arrest. At the police station, defendant submitted to a breath test on an Intoxilyzer 5000 machine. The result indicated that defendant had a blood alcohol content (BAC) of 0.13 percent.

At trial in June 2003, the state offered into evidence two documents certifying that the breath test machine had been tested for accuracy on January 14 and March 31, 2003, and had been determined to comply with ORS 813.160 and OAR 257-030-0100.[1] Defendant objected to the admission of

---

[1] ORS 813.160(1)(b)(C) requires the Department of State Police to

"[t]est and certify the accuracy of equipment to be used by police officers for chemical analyses of a person's breath before regular use of the equipment and periodically thereafter at intervals of not more than 90 days. Tests and certification required by this subparagraph must be conducted by trained technicians. Certification under this subparagraph does not require a signed document."

the exhibits, arguing, in part, that admission of the certifications, without establishing the unavailability of the technicians who prepared them or the persons who certified them as true and correct copies of the originals, violated his right to confront witnesses under the Oregon and United States constitutions. The trial court overruled the objection and admitted the certifications. Defendant was convicted, and, on appeal, he assigns error to the admission into evidence of the certifications.

In *State v. Conway*, 70 Or App 721, 690 P2d 1128 (1984), *rev den*, 298 Or 704 (1985), we considered and rejected arguments under both Article I, section 11, of the Oregon Constitution[2] and the Sixth Amendment to the United States Constitution that were identical to those made by defendant in this case. We observed that "[t]he traditional hearsay rule and the many concepts attending it, including the official records exception, came into the law long before the adoption of the federal and state constitutions" and concluded that the confrontation rights afforded by the constitutions do not apply to public records that were admissible to establish collateral facts at common law. *Conway*, 70 Or App at 724. However, in defendant's view, *Conway* should be overruled as to Article I, section 11, in light of the more recent Supreme Court decisions in *State v. Campbell*, 299 Or 633, 705 P2d 694 (1985), and *State v. Moore*, 334 Or 328, 49 P3d 785 (2002). But in *State v. William*, 199 Or App 191, 193-97, 110 P3d 1114, *rev den*, 339 Or 406 (2005), we adhered to our holding in *Conway* regarding Article I, section 11, in the face of an identical challenge. Accordingly, we reject defendant's Article I, section 11, argument for the reasons expressed in *William*.

---

OAR 257-030-0100 states that

> "[a] trained technician of the Oregon State Police will conduct an accuracy test of approved breath testing equipment and shall certify the accuracy of the equipment if accuracy test performance is within a range of 0.010 high to 0.020 low of the expected value. The testing can be performed by either an on site test, or by remote testing via telephone modem utilizing a computer. The computerized testing will utilize a security system to ensure the integrity of the scientific testing of the breath test equipment."

[2] Article I, section 11, of the Oregon Constitution provides, in part:

> "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]"

██      Defendant also argues that admission of the certifications violates his right to confrontation under the Sixth Amendment to the United States Constitution.[3] He posits that the "technicians' statements averring the certification of the Intoxilyzer machine constituted testimonial evidence," and that, because the technicians did not appear at trial and there was no opportunity to cross-examine them, the documents are inadmissible under *Crawford*.[4] Defendant's position would require that our decision in *Conway* be overturned. The state responds that the Intoxilyzer certifications are not "testimony" for purposes of *Crawford*, but rather are nontestimonial documents that would have been admissible at common law before the adoption of the Sixth Amendment. The state concludes that, because the certifications are nontestimonial in nature, they are admissible under *Ohio v. Roberts*, 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980). We agree with the state's argument.

In *Crawford*, the police questioned the defendant's wife regarding the circumstances of a homicide. The wife was not available to testify at trial but her statements to the police were admitted as statements against penal interest. The United States Supreme Court held that the admission of those statements in the defendant's criminal trial violated his Sixth Amendment right to confront witnesses against him. In examining the history that preceded the adoption of the Sixth Amendment, the Court observed that "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." *Crawford*, 541 US at 50. Reading the text of the Sixth Amendment in light of its history, the court concluded that the clause "reflects an especially acute concern with a specific type of out-of-court statement[,]" was testimonial evidence. *Id.* at 51. Although the Court declined to adopt a particular

---

[3] The Sixth Amendment to the United States Constitution provides, in part:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."

[4] On appeal, defendant does not argue that the authentications by the document custodians were "testimonial" in nature or that the authentications violated his confrontation rights under the Sixth Amendment.

test for what constitutes "testimonial evidence," it did conclude that *ex parte* testimony at a preliminary hearing as well as "[s]tatements taken by police officers in the course of interrogations" qualify. *Id.* at 52. Applying the above standards, the Court concluded that the statements made by the defendant's wife in response to police questioning were testimonial in nature, thereby implicating the defendant's Sixth Amendment right to confront witnesses.

Under *Crawford*, the threshold question is whether an out-of-court statement is "testimonial." *State v. Mack*, 337 Or 586, 101 P3d 349 (2004). In *Mack*, the issue was whether the Confrontation Clause prohibited a Department of Human Services caseworker from testifying concerning statements that a three-year-old child had made to her during a police-directed interview. The court concluded that, because the caseworker was serving as a proxy for the police, the child's statements to her were testimonial in nature. The court observed that "[t]he primary focus in *Crawford* was on the method by which government officials elicited out-of-court statements for use in criminal trials, not on the declarant's intent or purpose in making the statement" while conceding that "there may be situations in which the declarant's purpose in making a statement may bear on whether the statement is testimonial." *Id.* at 594.

In our view, *Crawford* and *Mack* establish certain parameters for determining whether evidence is "testimonial in nature" under the Sixth Amendment, parameters that are not satisfied in this case. First, the certifications in this case do not resemble the classic kind of testimonial evidence at which the Confrontation Clause was aimed—*ex parte* examinations of witnesses intended to be used to convict a particular defendant of a crime. Rather, the certifications are evidence about the accuracy of a test result arrived at by a machine. They were created by state employees in the course of carrying out routine ministerial duties required by statute and administrative rule to certify the accuracy of test results of Intoxilyzer machines. The first certification occurred before defendant was arrested, and the second occurred 45 days after his arrest and four months before his trial in June 2003. Rather than being directed at evidence about the accuracy of a machine result, the Confrontation Clause is directed

at the methodology of *ex parte* police or prosecutorial examinations of potential witnesses, those who make a solemn declaration or affirmation of fact to government officers for the purpose of establishing or proving a fact in issue in the case being prosecuted. The framers intended that, under the Sixth Amendment, the prior statements of a witness who did not appear at trial and was not available for cross-examination by the defendant, subject to certain exceptions, would not be admissible. *Crawford*, 541 US at 54. In that light, there is no resemblance between the historical examples that gave rise to the Confrontation Clause and the use of the certifications at issue in this case.

Second, the *Crawford* court emphasized the investigative and prosecutorial functions held by seventeenth and eighteenth-century English justices of the peace, observing that police officers and prosecutors perform a similar function today. *Id*. at 53. It is the exercise of those kinds of functions that implicate the Sixth Amendment right to confront. But here, there is no evidence in the record that the technicians were functioning as the proxy of the police investigation concerning defendant, such as occurred in *Mack*. Rather, it appears that they were merely ensuring that the machines operated properly and provided accurate readings before and after defendant's test result was obtained. Unlike police or prosecutorial interrogators, the technicians have no demonstrable interest in whether the certifications produce evidence that is favorable or adverse to a particular defendant.[5] Thus, the function of the technicians differs significantly from that of the public officers whose actions or methodology implicated confrontation issues at common law.

Third, the *Crawford* Court reasoned that the use of the defendant's wife's statements presented the same risk of a criminal conviction based on out-of-court declarations that occurred at common law by the use of *ex parte* examinations

---

[5] Although the technicians are likely government agents, it does not appear from the record in this case that they were directly involved in the procurement of evidence to be used specifically in the prosecution of defendant. *See also State v. Smith*, 66 Or App 703, 707, 675 P2d 510 (1984) (Holding that Breathalyzer certifications are admissible in criminal cases under OEC 803(8)(b) as public records and that the certifications do not stem from "the adversarial context of a particular case that might cloud law enforcement personnel's perception.").

by English justices of peace. According to the Court, "the constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement." *Id.* at 51. Because the Sixth Amendment is implicitly deemed to incorporate the hearsay exceptions established at the time of the founding, it follows that modern-day hearsay exceptions enacted by statute will not be deemed testimonial in nature if they parallel the hearsay exceptions that were not by their nature testimonial at common law, "for example, business records or statements in furtherance of a conspiracy." *Id.* at 56. *See also Conway*, 70 Or App at 724 (holding that there is no other exception at common law that has a more firm basis than the public records exception).

Here, the certifications of the accuracy of an Intoxilyzer machine in Oregon are more akin to hearsay statements that were not considered testimonial in nature at common law, such as public or business records. In fact, the certifications serve a dual purpose under Oregon law. Under ORS 813.100(3), a motorist's driving privileges are subject to administrative suspension if the motorist fails a breath test. The methods, procedures, and equipment used in the breath test and the certifications of the accuracy of the machines must comply with the requirements of ORS 813.160 for the suspension to be lawful. ORS 813.410(5)(h). This dual use of certifications as public records highlights its similarity with the uses made of recognized hearsay exceptions to the right to confront one's accusers at the time of the founding, and is further support for the proposition that the certificates are not testimonial in nature.

Other courts also have reasoned that certifications of devices measuring blood alcohol content are nontestimonial under *Crawford*. *See, e.g., State v. Cook*, 2005 Ohio 1550, 2005 WL 736671 (Ohio App 6 Dist, Mar 2005) (slip op at 19) (certifications are "not created in an investigatory or prosecutorial setting," and are also business records, and therefore within the exception in *Crawford*); *State v. Carter*, 326 Mont 427, 437, 114 P3d 1001 (2005) (certifications not substantive evidence of a particular offense, but rather foundational evidence for admission of substantive evidence); *Luginbyhl v. Commonwealth*, 46 Va 460, 618 SE 2d 347 (2005); *Napier v.*

*State*, 820 NE 2d 144, 149 (Ind App 2005) (certification non-testimonial because it does not pertain to defendant's guilt); *Rackoff v. State*, 275 Ga App 737, 741, 621 SE2d 841 (2005) (certifications not testimonial because they are routinely made and are not made in anticipation of prosecution against particular defendant); *State v. Godshalk*, 381 NJ Super 326, 332-33, 885 A2d 969 (2005) (certifications nontestimonial business records, and official records of New Jersey State Police). *But see People v. Orpin*, 796 NYS 2d 512, 8 Misc 3d 768 (2005) (certifications testimonial because, though business records, they are prepared only for use in DUII cases and technicians must have known reports would be used in criminal prosecutions); *Shiver v. State*, 900 So 2d 615 (Fla 2005) ("breath test affidavit" prepared by state trooper who administered test for admission at trial, stating date of performance of most recent maintenance by another trooper, was testimonial). Although the above decisions are not binding on us, we observe that most jurisdictions that have considered the issue appear to agree with our reasoning in this case regarding the applicability of *Crawford*.

We conclude for the above reasons that the Court's decision in *Crawford* does not operate to implicitly overrule our decision in *Conway*. On the facts of this case, we hold that the admission into evidence of the certificates, without the oral testimony of the technicians who prepared them, did not violate defendant's right to confrontation under the Sixth Amendment.

Affirmed.