Submitted on record and briefs November 30, 2006, affirmed March 28, 2007

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

OLLIE L. DAVIS,
*Defendant-Appellant.*

Multnomah County Circuit Court
040748506; A126406

156 P3d 93

Peter A. Ozanne, Executive Director, Peter Gartlan, Chief Defender, Legal Services Division, and Kristin

Carveth, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Doug M. Petrina, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

Defendant appeals from a conviction for misdemeanor driving while suspended. ORS 811.182. On appeal, she assigns error to the trial court's decision to admit into evidence two documents, together known as a "suspension packet," prepared by the Oregon Department of Transportation, Driver and Motor Vehicle Services Division (DMV). According to defendant, admitting the documents violated her constitutional right to confront the witnesses against her. We hold that one of the documents, a printout of defendant's driving record, was admissible because it was not "testimonial." As to the other document—a record of the fact that defendant was on notice that her driver's license was suspended—we hold that, regardless of whether or not it was erroneously admitted, it played no role in either the state's or defendant's case and therefore its admission cannot serve as ground for reversal. We therefore affirm.

The facts are uncontested. On June 9, 2004, Officer Shepard stopped defendant for failure to drive within a lane, a violation of ORS 811.370. She was unable to provide Shepard with a driver's license; subsequently, she told the officer that her license was suspended. Shepard "ran [defendant's] number" through the Law Enforcement Data System and confirmed that fact. She then cited defendant for driving while suspended.

At trial, the state offered as evidence defendant's "suspension packet," which, as noted above, contains two documents. The first is a certified copy of a computer printout listing defendant's driving infractions and the status of her license. At the bottom of the document is a statement, signed by the manager of the DMV customer services department, certifying that "the foregoing driving record copy is a correct transcript of the specified data contained within the data processing device or computer." The second document, known as the "implied consent form," is a copy of a two-page form dating from defendant's earlier arrest for the driving under the influence of intoxicants offense that led to the suspension of her license. The document is captioned, "COMBINED REPORT, NOTICE OF INTENT TO SUSPEND DRIVER, AND TEMPORARY DRIVER PERMIT."

Below the caption, the form contains boxes where a police officer filled in defendant's personal information, followed by text informing defendant that, because she had failed a breath test, her "driving privileges will be suspended at 12:01 [a.m.] on the 30th day after the date of arrest" for a period of one year. At the bottom of the first page, a Portland Police Officer signed a statement affirming that "the foregoing events occurred." The second page is illegible. Each page contains a statement by a DMV employee that the copy is accurate.

Defendant objected to the admission of the packet on the ground (among others not renewed on appeal) that it violated her right to confront witnesses under the Sixth Amendment as interpreted in *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004). The state responded that the documents were not testimonial and that therefore *Crawford* did not preclude their admission. The court agreed with the state, and this appeal ensued.

In *Crawford*, the Supreme Court held that the Confrontation Clause of the Sixth Amendment[1] bars testimonial hearsay evidence unless the witness is unavailable and the defendant had the opportunity to cross-examine that witness, or the statement falls within a common-law exception to the hearsay rule that existed at the time of the founding (hardly any of which, the Court noted, applied to nontestimonial statements used against the accused in criminal cases). 541 US at 53-56. In the present case, defendant had no opportunity to cross-examine the declarants; the case, therefore, turns on whether the contested evidence is testimonial or within a historical exception. Because we conclude that it was not testimonial, we do not reach the historical exception question.

The Court in *Crawford* did not provide a definition of "testimonial," noting only that, whatever the term meant, it clearly encompassed "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at 68. It is possible, however, to mine *Crawford* and a subsequent case, *Davis v. Washington*, ———

---

[1] "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."

US _____ , 126 S Ct 2266, 165 L Ed 2d 224 (2006), for clues. From *Crawford*, we can draw the inference that a testimonial statement is a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 US at 51 (quoting II Noah Webster, *An American Dictionary of the English Language* (1828)). Further, testimony is made by an "accuser." *Crawford*, 541 US at 51. Because the Confrontation Clause was designed to eliminate the civil law practice of using *ex parte* statements from earlier judicial or quasi-judicial proceedings, the modern equivalents of such statements are also inadmissible testimony. *Id.* So too are some statements to police officers, because "[t]he involvement of government officers in the production of testimonial evidence presents the same risk, whether the officers are police or justices of the peace." *Id.* at 53.

*Davis*, although focusing on what type of police interrogation produces testimonial evidence, also provides guidance. In that case, the Court distinguished between interrogation designed to produce evidence for later use in a criminal prosecution—which *does* elicit testimonial responses—and interrogation designed to help police deal with an ongoing emergency, which does *not* elicit testimonial responses. _____ US at _____ , 126 S Ct at 2276-77. In the latter situation, the declarant is "not acting as a *witness*; she was not *testifying*." *Id.* at 2277 (emphasis in original).

We have applied the inferences drawn from Supreme Court opinions in at least two cases. In *State v. Norman*, 203 Or App 1, 125 P3d 15 (2005), *rev den*, 340 Or 308 (2006), decided after *Crawford* but before *Davis*, we held that certificates attesting to the accuracy of an Intoxilyzer machine were admissible against the defendant in a drunk driving case. In doing so, we held that *Crawford* did not require us to reexamine *State v. Conway*, 70 Or App 721, 690 P2d 1128 (1984), *rev den*, 298 Or 704 (1985), where we upheld the admission of similar evidence against state and federal constitutional challenges, reasoning that the certificates were admissible under the "well-established" public record exception to the hearsay rule. *Id.* at 724 (quoting *State ex rel. Gladden v. Lonergan*, 201 Or 163, 175, 269 P2d 491 (1954)). We provided three bases for our conclusion. First, we noted

that the certifications did not resemble the classic kind of evidence that was the focus of the Confrontation Clause, that is,

> "*ex parte* examinations of witnesses intended to be used to convict a particular defendant of a crime. Rather, the certifications are evidence about the accuracy of a test result arrived at by a machine. They were created by state employees in the course of carrying out routine ministerial duties required by statute and administrative rule to certify the accuracy of test results of Intoxilyzer machines."

*Norman*, 203 Or App at 6. The Confrontation Clause is not directed at such evidence, but at "the methodology of *ex parte* police or prosecutorial examinations of potential witnesses, those who make a solemn declaration or affirmation of fact to government officers for the purpose of establishing or proving a fact in issue in the case being prosecuted." *Id.* at 6-7. Second, we noted that the people who certified the machines were not functioning as proxies for police officers; rather, they were technicians whose job was only to ensure that the machines were operating properly and providing accurate readings. *Id.* at 7. Third, we noted the similarity between the certificates and public or business records, which were generally not considered to be testimonial at common law. *Id.* at 8.

In *State v. Miller*, 208 Or App 424, 144 P3d 1052, *adh'd to on recons*, 210 Or App 176, 149 P3d 1251 (2006), we held that, in contrast to Intoxilyzer certificates, reports prepared by the state police forensic laboratory for use in a prosecution for possession of a controlled substance were testimonial. In reaching that conclusion, we refined our treatment of business records in *State v. Thackaberry*, 194 Or App 511, 515-16, 95 P3d 1142 (2004), *rev den*, 338 Or 17 (2005), holding that only those records "made in the 'systematic conduct of the business as a business'" were not testimonial. *Miller* 208 Or App at 437 (quoting *Palmer v. Hoffman*, 318 US 109, 113, 63 S Ct 477, 87 L Ed 645, *reh'g den*, 318 US 800 (1943)). The lab reports identifying the seized substances as contraband were testimonial, we held, because their primary purpose was to serve the prosecution in a future court proceeding against a particular defendant. *Id.* at 438-39. The reports, while not the fruit of police interrogation, nonetheless were responsive to police inquiries. *Id.* at 435.

■ Under the foregoing precepts, we conclude that the DMV printout of defendant's driving record is clearly not testimonial. Like Intoxilyzer certificates, and unlike crime lab reports, Oregon driving records are data compilations. They are not made and maintained for the primary purpose of criminal investigations. The employees are required by statute to keep the records; doing so is a ministerial duty having nothing to do with prosecuting a particular individual for criminal activity. ORS 802.200(9). Indeed, the records are created before any criminal act occurs. No person involved in the creation of the record can be said to have done so as a "witness" against a defendant, nor could any such person be deemed an "accuser." The admission of the printout did not violate defendant's right to confront the witnesses against her. *Accord Arizona v. King*, 213 Ariz 632, 146 P3d 1274, 1280 (2006) (Ariz Ct App 2006); *Sproule v. State*, 31 Fla L Weekly D 930, 927 So 2d 46 (Fla Dist Ct App 2006); *Card v. State*, 31 Fla L Weekly D 1180, 927 So 2d 200 (Fla Dist Ct App 2006); *Commonwealth v. Crapps*, 64 Mass App Ct 915, 835 NE2d 275, 276 (Mass App Ct 2005) (record of prior conviction is beyond the prohibition of *Crawford*); *People v. Taulton*, 129 Cal App 4th 1218, 29 Cal Rptr 3d 203, 204 (Cal App 2005) ("Records of prior convictions are not 'testimonial' and therefore are not subject to *Crawford*'s confrontation requirement." (Emphasis omitted.)); *State v. Benefiel*, 131 Wn App 651, 128 P3d 1251, 1253 (2006) (record of judgment and sentence is not testimonial).

■ The implied consent form presents a somewhat more complex question, but it is not one that we need to resolve in this case. The only purpose that the form could have served in this case would have been to negate defendant's testimony if she had tried to avail herself of the "lack of notice" affirmative defense against driving while suspended specified in ORS 811.180(1)(b) (affirmative defense to driving while suspended exists if "[t]he defendant had not received notice of the defendant's suspension or revocation * * *"). However, defendant did not raise that (or any other) affirmative defense. In fact, Shepard testified without objection that defendant herself had stated that she knew her license was suspended. Because the document played no role in defendant's conviction, any error in admitting it was harmless.

Affirmed.