COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Humphreys and Haley
Argued at Salem, Virginia


WILLIAM JERRY WIMBISH

                                                            OPINION BY
v.      Record No. 2873-06-3              JUDGE ROBERT J. HUMPHREYS
                                                             APRIL 8, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRY COUNTY
G. Carter Greer, Judge

James W. Haskins (Scott C. Wall; Young, Haskins, Mann, Gregory,
McGarry & Wall, P.C., on briefs), for appellant.

Leah A. Darron, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


William Jerry Wimbish appeals his conviction for driving a motor vehicle while

intoxicated, in violation of Code § 18.2-266, and the mandatory ten-day jail sentence he received

as required by Code § 18.2-270.  Wimbish raises two issues on appeal.  First, he argues that the

admission of the "Certificate of Blood Alcohol Analysis" by the trial court violated his

confrontation right under the Sixth Amendment to the United States Constitution.  Second, he

argues that the trial court erred by sentencing him to ten days in jail as required by Code

§ 18.2-270 because Code § 18.2-270 contains an unconstitutional mandatory presumption.  For

the following reasons, we affirm the trial court's decision.

I.  Background

"Under familiar principles of appellate review, we view the evidence and all reasonable

inferences fairly deducible from that evidence in the light most favorable to the Commonwealth,

the party that prevailed below."  Banks v. Commonwealth, 41 Va. App. 539, 543, 586 S.E.2d

876, 877 (2003). So viewed, the evidence established that on the night of December 23, 2006, Virginia State Trooper Eric J. O'Connell ("O'Connell") was on patrol in Henry County. While patrolling, he observed a 1984 Mercedes sedan make an unusually wide right turn onto T.B. Stanley Road, nearly running off of the left side of the road. O'Connell followed the Mercedes and observed the vehicle weave back and forth across the road's center yellow lines several times. Suspecting that the driver might be driving under the influence, O'Connell initiated a traffic stop.

Standing at the Mercedes' window, O'Connell asked the driver for his driver's license and registration card. O'Connell immediately smelled alcohol on the driver's breath. O'Connell also observed that the driver's speech was slurred, his eyes were bloodshot, and he had a difficult time taking his driver's license out of his pocket. The driver's license identified him as William Jerry Wimbish ("Wimbish"). O'Connell asked Wimbish to step out of the vehicle. Wimbish stepped out of the vehicle and "swayed heavily" as he walked. He admitted that he had just left a party where he had consumed four beers and two margaritas, consuming the last drink an hour earlier. He stated that he felt intoxicated. Wimbish failed a field sobriety test and refused to take another stating: "There's no need to do any more tests. You know I've had too much to drink." O'Connell placed Wimbish under arrest and took him to the magistrate's office.

At the magistrate's office, O'Connell, a licensed breath test operator, conducted a breath test on Wimbish using the Intoxilyzer 5000. As part of his ongoing training as a breath test operator, O'Connell had recently completed a recertification course through the Department of Forensic Science ("the Department"). In conducting the test, O'Connell completed each step pursuant to a checklist ("the Checklist") provided by the Department. The Checklist contains eleven steps for conducting a breath test.

Following the test, the Intoxilyzer 5000 printed the results on a pre-printed form entitled "CERTIFICATE OF BLOOD ALCOHOL ANALYSIS" ("the Certificate of Analysis"). The Certificate of Analysis form contained a number of blank fields that were filled in by a printer attached to the Intoxilyzer 5000. Some of this information was entered by the machine operator, including 1) the name of the accused, 2) the name of the jurisdiction, 3) the name and license number of the breath test operator and the date the officer's license expires, and 4) the name of the agency conducting the test. Other information printed upon the certificate by the Intoxilyzer 5000 was generated by the machine itself, including 1) the test equipment's number, 2) the last date on which the test equipment was tested, 3) the date and time the breath sample was taken, and 4) the sample's alcohol content. The information provided by the Intoxilyzer on the Certificate of Analysis also indicated that Wimbish's breath had an alcohol content of .22 grams per 210 liters of breath, which is over the statutory limit of 0.08 grams per 210 liters of breath. The Certificate of Analysis indicated that the Intoxilyzer had been tested on November 30, 2005.[1]

At the bottom of the Certificate of Analysis is an attestation clause that states:

> I certify that the above is an accurate record of the test conducted; that the test was conducted with the type of equipment and in accordance with the methods approved by the Department of Forensic Science; that the test was conducted in accordance with the department's specifications; that the equipment on which the breath test was conducted has been tested within the past six months and found to be accurate; that prior to administration of the test the accused was advised of his right to observe the process and see the blood alcohol reading on the equipment used to perform the breath test, and that I possess a valid license to conduct such test, given under my hand this _____ day of _____ , 20___.

---

[1] O'Connell also testified that a logbook is kept with the Intoxilyzer 5000 that contains a record of every time the machine is tested for accuracy and that the log also indicated that the machine had been tested on November 30, 2005.

O'Connell wrote the date of the test in the blank spaces in the attestation clause and signed his name in the box beneath the attestation clause marked "BREATH TEST OPERATOR."

Wimbish was subsequently convicted in general district court of driving while intoxicated, in violation of Code § 18.2-266. Wimbish appealed that conviction to the circuit court. Before trial, Wimbish made a motion asking the trial court to suppress the Certificate of Analysis, arguing that its admission would violate his right of confrontation under the Sixth Amendment to the United States Constitution. The trial court denied his motion, holding that the Certificate of Analysis was not testimonial and therefore did not implicate the Sixth Amendment. The trial court subsequently found Wimbish guilty of driving while intoxicated, in violation of Code § 18.2-266.

After being found guilty, but prior to sentencing, Wimbish argued that the relevant sentencing provision of Code § 18.2-270 is unconstitutional because it contains an unconstitutional mandatory presumption. The trial court rejected his argument and sentenced him to the mandatory ten days in jail pursuant to Code § 18.2-270. This appeal follows.

II. Analysis

A. The Constitutionality of Admitting the Certificate of Analysis

In his first question presented, Wimbish argues that the admission of the Certificate of Analysis violated his right to confrontation under the Sixth Amendment. Specifically, Wimbish claims that the test results provided by the Intoxilyzer 5000 and certain statements made by O'Connell in the attestation clause are testimonial hearsay.

The admissibility of evidence is within the discretion of the trial court, and we review its decisions only for abuse of discretion. Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). However, whether the Certificate of Analysis violates the Sixth Amendment as

- 4 -

"'testimonial hearsay' [] is a question of law, reviewed *de novo* by this Court." Michels v.

Commonwealth, 47 Va. App. 461, 465, 624 S.E.2d 675, 678 (2006).

The Confrontation Clause of the Sixth Amendment to the United States Constitution

mandates that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted

with the witnesses against him." U.S. Const. amend. VI. That "bedrock procedural guarantee

applies to both federal and state prosecutions." Crawford v. Washington, 541 U.S. 36, 42 (2004)

(citing Pointer v. Texas, 380 U.S. 400, 406 (1965)).

In Crawford, the Supreme Court of the United States set out to clarify its Confrontation

Clause jurisprudence in order to ensure that it remained "faithful to the Framers' understanding"

of the confrontation right. Id. at 59. The Court noted that the Confrontation Clause targeted a

specific "evil," namely the "civil-law mode of criminal procedure, and particularly its use of *ex*

*parte* examinations as evidence against the accused." Id. at 49. That historical concern centered

on the admission of *ex parte* statements taken by government officials, serving "an essentially

investigative and prosecutorial function," at trial in lieu of live testimony. Id. at 43, 53. The

Court held that, because the right of confrontation developed in response to those specific

abuses, "[t]he Sixth Amendment must be interpreted with [that] focus in mind." Id. at 50.

For the first time, the Court in Crawford distinguished between "testimonial" and

"non-testimonial" statements. The Court reasoned that the Confrontation Clause protects against

"testimonial" statements because, by its own language, it only "applies to 'witnesses' against the

accused – in other words, those who 'bear testimony.'" Id. at 51 (quoting 1 N. Webster, An

American Dictionary of the English Language (1828)). The Court held that the Confrontation

Clause bars the "admission of testimonial statements of a witness who did not appear at trial

unless he was unavailable to testify, and the defendant had had a prior opportunity for

cross-examination." Id. at 53-54. By contrast, the Court held that "[w]here nontestimonial

- 5 -

hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law," even suggesting that such statements may be "exempted [] from Confrontation Clause scrutiny altogether." Id. at 67.  Although the Court explicitly "[left] for another day any effort to spell out a comprehensive definition of 'testimonial,'" it did provide that, "at a minimum," the term applies "to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id.

The issue in this case is whether portions of the Certificate of Analysis, namely the breath test results and the attestation clause, are "testimonial" and, thus, subject to the Confrontation Clause.  Because the portions of the Certificate of Analysis that Wimbish complains of include "statements" from two different sources – O'Connell and the Intoxilyzer 5000 – we must address each separately.

## 1. Breath Test Results

Wimbish first challenges the results of the breath test produced by the Intoxilyzer 5000. In order to assess Wimbish's argument, it is necessary first to understand the source generating the data or "statement" that Wimbish complains of and then determine whether that source is a "witness."  The "statement" that Wimbish's breath-alcohol content was ".22 grams per 210 liters of breath" was generated by the Intoxilyzer 5000 indicating the device's analysis of his breath. Thus, the Intoxilyzer 5000 was the purported "witness" making the alleged out-of-court "statement."

The Confrontation Clause protects criminal defendants from the "admission of testimonial *statements* of a *witness* who did not appear at trial." Id. at 53-54 (emphasis added). "Only [testimonial statements] cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." Davis v. Washington, 547 U.S. 813, 821 (2006).  Although there is much dispute over what specific types of evidence fall within the scope of the Confrontation

Clause, under even the broadest interpretation the clause applies only to out-of-court *statements* made by *witnesses*. Thus, the right of confrontation does not affect the admissibility of evidence that is not a statement made by a witness.

Although Virginia courts have not addressed whether a machine that analyzes the alcohol content of breath is a "witness" that can make "statements" for the purpose of the Confrontation Clause, we addressed a similar issue in Penny v. Commonwealth, 6 Va. App. 494, 370 S.E.2d 314 (1988). Penny involved the admissibility of a report produced by a "call trap" device that monitored telephone activity on a particular telephone line. Id. at 498, 370 S.E.2d at 316. We rejected the argument that the machine's report was an out-of-court statement made by a witness and subject to the general rule preventing the admission of hearsay:

> With a call trap device, there exists no out-of-court declarant who could be subject to cross-examination. The scientific advances of modern technology have enabled the call trap device to make and record the occurrence of electronic events. No human entered into the call trap device the conclusion that the phone in Penny's residence had completed a contact with the phone in Hamilton's residence.

Id. at 498-99, 370 S.E.2d at 317.

The Intoxilyzer 5000, like the call trap device in Penny, is not a witness or declarant capable of making statements. Here, as in Penny, no human entered into the Intoxilyzer 5000 the conclusion that Wimbish's breath alcohol content was .22 grams per 210 liters of breath. Wimbish blew into the machine, the machine analyzed his breath and reported the results of its analysis. The machine was the sole source of the test results. Thus the result of the breath test was merely data produced by a machine, not a statement produced by a witness. See United States v. Moon, 512 F.3d 359, 362 (7th Cir. 2007) ("[D]ata are not 'statements' in any useful sense. Nor is a machine a 'witness against' anyone."); United States v. Washington, 498 F.3d 225, 230 (4th Cir. 2007) ("'[S]tatements' made by machines are not out-of-court statements

- 7 -

made by declarants that are subject to the Confrontation Clause."); Caldwell v. State, 495 S.E.2d 308, 310 (Ga. Ct. App. 1997) (holding that printouts from a breath test machine "are not hearsay but rather the mechanically-generated reports automatically created by the machine. They do not constitute out-of-court statements by any person or the conclusion of a third party not before the court . . . ." (internal citations omitted)); State v. Van Sickle, 813 P.2d 910, 913 (Idaho Ct. App. 1991) (a "printout from the Intoximeter is not a 'statement' for hearsay purposes . . . the printout is a test result produced by a machine"); see also People v. Jambor, 729 N.W.2d 569, 575 (Mich. Ct. App. 2007) (fingerprint cards containing only "objective information" and not "subjective statements" are not testimonial). Because the breath test result is not a statement made by a witness, the Confrontation Clause does not place any restrictions on its admission.[2]

## 2. Attestation Clause

Wimbish claims that two of the assertions O'Connell made in the attestation clause are testimonial. The relevant portion of the attestation clause states: "I certify . . . that the test was conducted with the type of equipment and in accordance with the methods approved by the

---

[2] We acknowledge that courts in other jurisdictions have held certain types of scientific reports to be testimonial. However the reports in those cases were generally either produced or interpreted by a scientist or a technician. See Thomas v. United States, 914 A.2d 1 (D.C. 2006) (lab report prepared by a chemist is testimonial); Martin v. State, 936 So. 2d 1190 (Fla. Dist. App. 2006) (lab report prepared by a scientist is testimonial); State v. Laturner, 163 P.3d 367 (Kan. Ct. App. 2007) (lab report prepared by a scientist is testimonial); People v. Lonsby, 707 N.W.2d 610 (Mich. Ct. App. 2005) (scientist's "subjective observations and analytic standards" regarding scientific testing results are testimonial); State v. Caulfield, 722 N.W.2d 304 (Minn. 2006) (lab report prepared by a scientist is testimonial); State v. March, 216 S.W.3d 663 (Mo. 2007) (scientist's "forensic analysis" of a substance is testimonial); State v. Kent, 918 A.2d 626 (N.J. Super. Ct. App. Div. 2007) (lab report prepared by a forensic scientist is testimonial). We do not decide today whether all scientific reports are nontestimonial because it is unnecessary for us to do so. See Magruder v. Commonwealth, 275 Va. 283, 657 S.E.2d 113 (2008) (declining to unnecessarily address whether certain scientific reports are testimonial because the defendants waived their Sixth Amendment rights). Rather, we merely hold that information generated by a machine, and presented without human analysis or interpretation is not testimonial because the machine is not a witness in any constitutional sense and thus the data standing alone is not a testimonial statement under the Confrontation Clause of the Sixth Amendment.

Department of Forensic Science [and] that the equipment on which the breath test was conducted has been tested within the past six months and found to be accurate." Wimbish claims that the Confrontation Clause barred admission of O'Connell's assertions 1) that the test was conducted in accordance with approved methods and 2) that the machine had been tested in the past six months. We address each assertion separately.

a. O'Connell's Assertion That He Used Approved Methods

Wimbish argues that O'Connell's assertion that he conducted the breath test "with the type of equipment and in accordance with the methods approved by the Department" is hearsay because O'Connell could not answer certain questions about the Department's methods on cross-examination. O'Connell explained that he was able to follow the Department's approved methods because he had received training from Alka Lohman ("Lohman"), the Director of the Department's Division of Forensic Science Breath Section. Wimbish claims that he had a right under the Sixth Amendment to confront Lohman because she had instructed O'Connell on the Department methods that he was purportedly testifying about.

"'Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.'" Stevenson v. Commonwealth, 218 Va. 462, 465, 237 S.E.2d 779, 781 (1977) (quoting McCormick on Evidence § 246 (2d ed. 1972)). Said differently, hearsay is "testimony given by a witness who relates, not what he knows personally, but what others have told him, or what he has heard said by others." Cross v. Commonwealth, 195 Va. 62, 74, 77 S.E.2d 447, 453 (1953). Wimbish argues that, by claiming to have followed the proper methods, O'Connell is testifying to the content of the methods, and, because he could not testify as to all of the Department's methods, that testimony is hearsay. We do not agree.

In Oulds v. Commonwealth, 260 Va. 210, 532 S.E.2d 33 (2000), the Supreme Court of Virginia held that a police officer's testimony that he complied with certain municipal regulations was not hearsay. The Court held that testimony that the officer complied with the regulations "was not offered to prove the existence and content of such regulations" and, therefore, that testimony was not hearsay. Id. at 213, 532 S.E.2d at 35.

Likewise, O'Connell's testimony in this case was not offered to prove the content of the Department's breath analysis methods. Nor was his testimony offered to prove the content of the training that O'Connell received from Lohman. The attestation clause merely states his opinion that he complied with the Department's approved methods.

Consequently, Wimbish's argument that he was denied the right to cross-examine Lohman must fail. O'Connell's statement that "the test was conducted with the type of equipment and in accordance with the methods approved by the Department of Forensic Science" is not hearsay. It is not "what others have told him, or what he has heard said by others." Id. at 213, 532 S.E.2d at 35. It is simply his opinion that he followed the rules. O'Connell's later admission that he was not familiar with all of the Department's methods does not change his opinion testimony to hearsay. The extent of O'Connell's knowledge of the Department's methods goes only to the weight of his testimony, not its admissibility. As non-hearsay, O'Connell's testimony did not implicate the Confrontation Clause. See Davis, 547 U.S. at 823 (holding that "the Confrontation Clause applies only to testimonial hearsay").

b. O'Connell's Assertion That the Machine Had Been Tested in the Past Six Months

O'Connell's statement that "the equipment on which the breath test was conducted has been tested within the past six months and found to be accurate" is clearly hearsay, but that does not end the analysis. O'Connell admitted that he was not present when the machine was tested and that he only knew of the test because "that is what is in the sheet in the log book." Wimbish

argues that the admission of O'Connell's hearsay statement violated his rights under the Confrontation Clause because it was testimonial. We disagree.

Since Crawford was decided, several other jurisdictions have addressed the issue of whether similar maintenance logs are testimonial.[3] Those courts that have held that maintenance logs are nontestimonial have generally done so for one of two reasons. One line of cases holds that maintenance logs are not testimonial because they are business records "made and maintained in the ordinary course of business." Boshancurt v. Eisenburg, 129 P.3d 471, 475 (Ariz. Ct. App. 2006); see e.g. State v. Godshalk, 885 A.2d 969, 973 (N.J. Super. Ct. Law Div. 2005) (inspection certificates are business records that Crawford "specifically excluded . . . from [its] scope"); Pierce v. State, 628 S.E.2d 235, 238 (Ga. Ct. App. 2006) (maintenance certificates are admissible as business records and, therefore, not testimonial); State v. Norman, 125 P.3d 15, 19 (Or. Ct. App. 2005) (test logs "are more akin to hearsay statements that were not considered testimonial in nature at common law, such as public or business records"). A second line of cases holds that maintenance logs are not testimonial because they are not evidence "against" any particular defendant. See, e.g., Rackoff v. State, 621 S.E.2d 841, 845 (Ga. Ct. App. 2005) (Maintenance logs "are not made in anticipation of prosecution against any particular

---

[3] An overwhelming majority of those courts have held that such logs are not testimonial. See Abyo v. State, 166 P.3d 55, 60 (Alaska Ct. App. 2007) (records certifying the date that a breath test machine was tested are nontestimonial); Boshancurt v. Eisenburg, 129 P.3d 471, 480 (Ariz. Ct. App. 2006) (same); Pierce v. State, 628 S.E.2d 235, 238 (Ga. Ct. App. 2006) (same); State v. Marshall, 163 P.3d 199, 205 (Haw. Ct. App. 2007) (same); Napier v. State, 820 N.E.2d 144, 149-50 (Ind. Ct. App. 2005) (same); People v. Kim, 859 N.E.2d 92, 93-94 (Ill. App. Ct. 2006) (same); Commonwealth v. Walther, 189 S.W.3d 570, 575 (Ky. 2006) (same); State v. Carter, 114 P.3d 1001, 1007 (Mont. 2005) (same); State v. Godshalk, 885 A.2d 969, 973 (N.J. Super. Ct. Law Div. 2005) (same); State v. Dedman, 102 P.3d 628, 636 (N.M. 2004) (same); People v. Kanhai, 797 N.Y.S.2d 870, 875 (N.Y. Crim. Ct. 2005) (same); State v. Norman, 125 P.3d 15, 18 (Or. Ct. App. 2005) (same); see also State v. Fischer, 726 N.W.2d 176, 184 (Neb. 2007) (document certifying the accuracy of the solution used to test a breath test machine was nontestimonial); State v. Shisler, 2006 Ohio 5265, P15 (Ohio Ct. App. 2006) (same); but see Shiver v. State, 900 So.2d 615, 617 (Fla. Dist. Ct. App. 2005) (a record of the date that maintenance was performed on a breath test machine was testimonial).

defendant."); State v. Carter, 114 P.3d 1001, 1007 (Mont. 2005) ("Certification reports are nontestimonial in nature in that they are foundational, rather than substantive or accusatory."); People v. Kim, 859 N.E.2d 92, 94 (Ill. App. Ct. 2006) ("[T]he evidence [in a maintenance certification] is not 'against' any particular defendant."). We find the analysis supporting both lines of cases persuasive.

Crawford explicitly excluded business records from its definition of testimonial. Crawford, 541 U.S. at 55 ("Most of the hearsay exceptions covered statements that by their nature were not testimonial – for example, business records . . . ."). Although not specifically characterized as such in prior case law, Intoxilyzer 5000 maintenance logs are essentially business records for the purposes of the Confrontation Clause. The maintenance logs are created by state employees conducting tests of the machines as part of their routine ministerial duties. Tests of the Intoxilyzer 5000 are conducted because they are required by administrative rule, not in anticipation of any particular litigation. See 12 VAC 40-20-30 ("Breath tests shall be tested for accuracy by the [D]epartment at least once every six months."). These logs, kept in the ordinary course of business by state employees, recording the completion of required tasks, are essentially business records and their admission does not resemble the type of civil law abuses that the Confrontation Clause was intended to protect against.

Furthermore, the Intoxilyzer 5000 maintenance logs do not pose a confrontation issue because they are not prepared "against" any particular defendant. This reasoning is consistent with our holding in Michels. In Michels, we held that certificates from the Delaware Secretary of State certifying that two entities were not licensed as limited liability companies in Delaware were nontestimonial. Michels, 47 Va. App. at 466, 624 S.E.2d at 678. We recognized that "the Confrontation Clause is aimed at protecting criminal defendants from those people making accusations *against* them." Id. (emphasis added). We reasoned that "the certificates are not by

- 12 -

their nature accusatory and do not describe any criminal wrongdoing of appellant. Rather, they are a neutral repository of information that reflects the objective results of a search of public records." Id. at 469, 624 S.E.2d at 680. We held that such "documents establishing the existence or absence of some objective fact, rather than detailing the criminal wrongdoing of the defendant, are not 'testimonial.'"[4] Id. at 467, 624 S.E.2d at 678.

Likewise, in Anderson v. Commonwealth, 48 Va. App. 704, 634 S.E.2d 372 (2006), we held that a certificate offered as evidence of the chain of custody pursuant to Code § 19.2-187.01 is not testimonial. Again recognizing the Confrontation Clause's protection against "accusatorial" statements, we held that "the chain of custody verification provides only foundation evidence that cannot be fairly characterized as accusatorial." Id. at 715, 634 S.E.2d at 377. Because it is not accusatory, "the chain-of-custody inference . . . constitutes nontestimonial evidence outside the protective 'perimeter' of the Confrontation Clause." Id.

The maintenance log at issue in this case is not evidence "against" any particular defendant. The logs are not created in anticipation of litigation against any one person and do not contain any accusations of criminal wrongdoing. As required by administrative rule, the Intoxilyzer 5000 would be tested and the log would be kept regardless of whether or not the machine is ever used. These logs are merely "documents establishing the existence or absence of some objective fact, rather than detailing the criminal wrongdoing of the defendant." Michels, 47 Va. App. at 467, 624 S.E.2d at 678. The maintenance log of the Intoxilyzer 5000 bears no resemblance to *ex parte* examinations, the "evil" that the Confrontation Clause was designed to guard against. Crawford, 541 U.S. at 49. Because the maintenance log is not accusatory and is

---

[4] We recently reaffirmed Michels' holding in Jasper v. Commonwealth, 49 Va. App. 749, 644 S.E.2d 406 (2007). In Jasper, we extended Michels' holding that "a certification of an *out-of-state* official regarding an *absence* of a certain record" is nontestimonial, to hold that "the certification of an *in-state* official regarding the *existence* of certain records" is likewise nontestimonial. Id. at 757, 644 S.E.2d at 411 (emphasis in original).

essentially a business record, we hold that it is not testimonial and, therefore, does not implicate the Sixth Amendment.

In sum, we hold that none of the statements that Wimbish complains of in the Certificate of Analysis implicate the Confrontation Clause. We therefore hold that the trial court did not err in admitting the Certificate of Analysis into evidence.

### B. The Constitutionality of Code § 18.2-270

Wimbish next argues that the mandatory minimum sentencing requirement contained in Code § 18.2-270 violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution because it contains a mandatory presumption. Code § 18.2-270 states in pertinent part:

> any person violating any provision of § 18.2-266 shall be guilty of a Class 1 misdemeanor with a mandatory minimum fine of $250. If the person's blood alcohol level as indicated by the chemical test administered as provided in this article was at least 0.15, but not more than 0.20, he shall be confined in jail for an additional mandatory minimum period of five days or, if the level was more than 0.20, for an additional mandatory minimum period of 10 days.

Wimbish argues that the statute requires the fact finder to determine whether the accused's blood alcohol level exceeded the statutory threshold of 0.15 or 0.20 at the time of the offense. From that premise, Wimbish reasons that the statute requires the fact finder to presume that, because an accused's blood alcohol level exceeded the statutory threshold at the time of *testing*, it also exceeded the threshold levels at the time of the *offense*.

That is not the case. The accused's blood alcohol level at the time of the offense is irrelevant for the purpose of whether or not the enhanced sentence applies under Code § 18.2-270. For a defendant to be eligible for Code § 18.2-270's enhanced mandatory sentencing, the Commonwealth must prove two elements: 1) that the accused violated a provision of Code § 18.2-266 and 2) that the accused's "blood alcohol level as indicated by the

- 14 -

chemical test administered as provided in this article was at least 0.15." Thus, sentencing pursuant to Code § 18.2-270 does not require proof of the accused's blood alcohol level at the time of the offense. It simply mandates a minimum sentence if the accused has been convicted of driving while intoxicated and his blood alcohol level "as indicated by the chemical test" exceeded the threshold level. Therefore, Code § 18.2-270 does not require the fact finder to presume or infer anything. Thus, we hold that Code § 18.2-270 is constitutional and affirm the trial court's decision to sentence Wimbish to a mandatory term of ten days in jail.

### III. Conclusion

Based on the foregoing, we hold that the trial court's admission of the Certificate of Analysis did not violate the Confrontation Clause and that Code § 18.2-270 does not contain an unconstitutional presumption. Therefore, we affirm Wimbish's conviction.

Affirmed.