OPINION OF THE COURT
Deborah Stevens Modica, J.
A bench trial was commenced before me on December 6, 2004 wherein the defendant was charged with one count of driving a motor vehicle while impaired by alcohol under Vehicle and Traffic Law § 1192 (1).
As part of their case-in-chief, the People offered into evidence as business records five exhibits, People’s 3A, 3B, 3C, 3D and 3E, which contain statements of individuals who were not called to testify at trial. Exhibits 3A, 3B and 3C are certified copies of field unit inspection reports of tests conducted by a New York City Police Department (hereinafter NYPD) technician on the Intoxilyzer machine which was used to conduct the breath analysis of the defendant; exhibit 3D is a certified copy of a record of the analysis of the simulator solution lot conducted by the New York State Police Laboratory and used in the breath alcohol test of the defendant; and exhibit 3E is a certified copy of the calibration test conducted by an NYPD technician on the Intoxilyzer machine used in this case.
Citing the decision of the United States Supreme Court in Crawford v Washington (541 US 36 [2004]), the defendant has objected to the introduction of these exhibits, and any testimony concerning them, on the ground that their admission violates the defendant’s right of confrontation as guaranteed by the Sixth Amendment of the United States Constitution. In essence, the defendant has argued that since he has been denied the opportunity to cross-examine the actual technicians who performed the tests, the documents in question are impermissible hearsay. It is the defendant’s position that the business records exception to the hearsay rule in criminal cases has been eliminated by the Supreme Court’s decision in Crawford. This court has reserved rendition of a verdict in this matter pending further consideration of the defendant’s argument.
In Crawford v Washington, the United States Supreme Court held that it was a violation of an accused’s right to confront witnesses where testimonial evidence is admitted from a presently unavailable witness and there was no prior opportunity to cross-examine the witness. Although no comprehensive definition of *449 “testimonial” was provided by the Court, it did identify types of evidence that clearly were testimonial in its view, such as statements taken by police officers in the course of interrogations and ex parte testimony at a preliminary hearing, grand jury proceeding, or former trial. (Crawford at 68.) According to the Crawford court, unless it can be shown that the witness is unavailable to testify at trial and that the defendant had a prior opportunity to cross-examine the witness, such out-of-court statements are inadmissible under the Sixth Amendment.
Although a quick answer to this issue in the instant case might be provided by the Crawford court’s brief reference to business records being an historical exception to the rule against hearsay that “by their nature were not testimonial” (id. at 56), the Court’s broadness of language in the case, as well as the Court’s refusal to define “testimonial evidence,” its departure from its own former jurisprudence and its sweeping condemnation of the development of hearsay exceptions, have led to the defendant’s challenge here. (Id.; see also Friedman, Adjusting to Crawford: High Court Decision Restores Confrontation Clause Protection, 19 Crim Just 4, 7 [Summer 2004]; People v Hardy, 4 NY3d 92 [2005]; Perrotta, The Struggle To Define “Testimony” after “Crawford,” NYLJ, June 21, 2004, at 1, col 3.) Each of the exhibits in issue here was offered under the business records exception to the rule against hearsay. Each contains a statement, pursuant to CPLR 4518 (c), that the copy of the record attached is an exact photocopy of the original; that the certifier* has possession, custody, and control of the original record; that the record in question was made in the regular course of business; and that it was the regular course of business to make the record at the time of each event or within a reasonable time thereafter.
In New York State, the statutory business records rule was enacted in 1928 to overcome the deficiencies of the common-law *450 rules which severely hampered proof of many valid claims. (People v Kennedy, 68 NY2d 569, 578 [1986]; Prince, Richardson on Evidence § 8-301, at 595 [Farrell 11th ed].) The ancient nature of the rule in our state predates the Constitution; in fact, it stems from the early Dutch colonial courts where the regularly kept books of merchants and traders were permitted into evidence as proof of the charges incurred by a business. This evidence continued to be permitted after New York became an English colony. (Fisch, New York Evidence § 831, at 481 [2d ed].)
Although restrictions on its use developed over time, by the early 19th century other business entries were permitted into evidence, if made in the regular course of business, at or within a reasonable period of time of the transaction recorded, by a person unavailable to testify, who had personal knowledge of the event, in order to bring the law of evidence into conformity with the requirements of the business practices of that time. (Id.) Further expansion of the rule developed in the 20th century, with the growth of large scale and more complex business and commercial enterprises and their record keeping, leading eventually to the enactment of CPLR 4518, in recognition of the fact that businesses could not, as a practical matter, produce every person involved in the making of a record, and that records made routinely in the course of business could be considered trustworthy. (People v Kennedy at 579.) It was no longer necessary to show that the maker of the record was unavailable. (Fisch, New York Evidence § 832, at 482-483 [2d ed]; People v Buie, 86 NY2d 501, 506 [1995]; People v Driscoll, 251 AD2d 759, 760 [3d Dept 1998]; People v Vanterpool, 214 AD2d 429 [1st Dept 1995].) Indeed, it has been long held that records made systematically for the conduct of a business as a business are highly trustworthy because they are routine reflections of day-to-day operations and because the maker’s obligation is for the records to be truthful and accurate in order for the business to function. (People v Kennedy at 579.)
The records in issue before this court are clearly business records. The New York City Police Department, as well as the New York State Police Crime Laboratory, certainly qualify as businesses under the broad definition of CPLR 4518 (a) that a business includes “a business, profession, occupation and calling of every kind.” (People v Guidice, 83 NY2d 630, 635 [1994].) In this case, exhibits 3A through 3C, the field unit inspection tests, were conducted on three different dates, as a routine course of busi *451 ness for the NYPD’s laboratory, to evaluate the operability and accuracy of its breath testing machines as testified to by Ms. Guzowski of the Intoxicated Drivers Testing Unit. In fact, each machine is tested on a regular schedule of between 5 to 14 days. The calibration tests contained in exhibit 3E were also conducted as a routine course of business to maintain the operability and accuracy of the machine. All of these tests were conducted, and records made of them, prior to the defendant’s arrest in this case and pursuant to the New York State Department of Health Rules and Regulations found at 10 NYCRR 59.4, setting forth the criteria for breath testing instruments, and section 59.5 which covers breath analysis techniques and methods. In particular, section 59.5 (f) states: “Proper and adequate records of methods and procedures, analyses, and results shall be maintained by each agency or laboratory using breath analysis instruments, including but not limited to operational check list, calibration test records, and certifications for standards and ampoules.”
These same state rules requiring the testing of breath instruments and the maintaining of records also apply to exhibit 3D, the simulator solution lot test conducted by the New York State Police. It, too, was conducted prior to defendant’s arrest, and the record of it is required to be kept by state law. The test is conducted routinely by the State Police as a regular course of their business in maintaining highway safety by ensuring the accuracy of tests performed by police departments throughout the state and clearly qualifies as a business record. (See People v Cratsley, 86 NY2d 81, 90-91 [1995]; People v Dailey, 260 AD2d 81, 83 [4th Dept 1999].)
That the records in question qualify as business records does not end the inquiry. As has long been held in New York, documents that are prepared solely for litigation should be excluded at trial; however, if there are business, administrative, or regulatory reasons requiring documents to be made, they should be admissible. (People v Foster, 27 NY2d 47, 52 [1970]; People v Guidice at 635.) More important, even if it was foreseeable that they might later be used for litigation purposes, as in this case, if that was not their sole purpose when made, the documents are admissible. (People v Foster at 52; People v Guidice at 635; People v Farrell, 58 NY2d 637, 638 [1982] [certified records of tests of sample ampoules used in breathalyzers admissible].)
In Foster, the defense challenged the admissibility of a speedometer deviation record, introduced to prove the reliability of *452 the speedometer used to clock the speed of a defendant’s car. The Court found that the tests were made at regularly scheduled intervals, they were mere memorials of the fact that the tests were conducted and their results, and were classic examples of records made and kept in the regular course of business — in this case, the police business of maintaining highway safety. (People v Foster at 52.) Although the records were later used in litigation, this possible future use did not defeat their admissibility as business records. (Id.)
This description precisely fits all the exhibits in issue in this case. All are records of tests conducted at regularly scheduled intervals, by a police department, which is a “business,” as a regular part of its business of maintaining highway safety. None were made specifically for this litigation, and none contain opinions or “testimony”; they are simply memorializations of tests conducted. Indeed, the proper operation of the machine in question is important not just to persons arrested and on trial, but also to persons who may be stopped for driving while intoxicated and tested who are not, in fact, in violation of the law. Given that the tests were conducted for purposes other than that of this litigation, they are admissible as business records. (People v Guidice at 635 [time sheet entries of electronic surveillance tapes were properly admitted as business records; they served an important administrative function; and were required by court order]; cf. People v Rogers, 8 AD3d 888 [3d Dept 2004] [blood test prepared by private lab at request of law enforcement for purposes of prosecution not admissible]; People v Hernandez, 7 Misc 3d 568 [Sup Ct, NY County 2005] [latent print report not taken for administrative use, but for goal of prosecuting].)
The defense has cited People v Capellan (6 Misc 3d 809 [Crim Ct, Kings County 2004]), decided by a court of coordinate jurisdiction, in support of his argument that exhibits 3A through 3E are inadmissible as violative of the Confrontation Clause. In Capellán, an affidavit was proffered by the People as a business record as proof of regularity/mailing of a license suspension order prepared and executed by the records manager of the Department of Motor Vehicles Certified Document Center. The affidavit was executed 10 years after a suspension order was made, and six months after the defendant’s arrest for driving with a suspended license. Since, under CPLR 4518 (c), a record must be prepared at the time of the event or within a reasonable time thereafter, the court concluded that the affidavit in *453 question did not meet the requirements of a business record. In addition, the affidavit’s contents, describing in some detail the process of license suspension and notification to those whose licenses have been suspended, were found by the court to be testimonial in nature rather than routine entries typical of business records. (People v Capellan at 812.) Thus, the facts in Capellan are clearly distinguishable from those in the instant case. To the extent that the decision in Capellan dictates a different result in this case, this court declines to follow it.
Given the well-established nature of the business records exception to the hearsay rule in New York, predating our existence as a state, and given Justice Scalin’s concession in Crawford that the Sixth Amendment most naturally admits “those exceptions established at the time of the founding” (Crawford at 54), it is clear that New York’s statutory embodiment of the business record hearsay exception survives the Supreme Court’s decision in Crawford. Since in this court’s view the records in question were not testimonial in nature, were properly certified and meet all the requirements of business records pursuant to CPLR 4518, they are admitted into evidence against the defendant, as is all testimony concerning the documents.

 Ms. Anna Guzowski, a criminalist with the Intoxicated Drivers Testing Unit of the NYPD, who also testified at trial, certified exhibits 3A, 3B and 3C, pursuant to CPLR 4518 (c), each of which contain field unit inspection reports of tests conducted on the breath analysis machine in question by another technician in the unit on three different days, as well as the actual test results printed out from the Intoxilyzer machine used in this case. Ms. Guzowski also certified exhibit 3E, a calibration test performed by another technician in the unit which also included the actual test results printed from the machine in question. Exhibit 3D contains a certification pursuant to CPLR 4518 (c) from the Director of the New York State Police Crime Laboratory of a simulator solution lot analysis conducted by a forensic scientist with the laboratory, and used by the NYPD in the Intoxilyzer machine which tested defendant’s breath sample.