**Noel Leo ROUSSEL, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–8742.

Court of Appeals of Alaska.

June 24, 2005.

Sharon Barr, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for the Appellant.

Kenneth J. Diemer, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

STEWART, Judge.

Noel Leo Roussel was convicted by a jury of several counts of fourth-degree misconduct involving a controlled substance.[1] Roussel claims that the superior court should have granted a mistrial sua sponte, but we reject that claim because Roussel has not shown plain error. Roussel next claims that the superior court should have granted his motion for a mistrial, but we reject that claim because we conclude that the superior court did not abuse its discretion when it denied the motion. We reject Roussel's cumulative error claim because he has not shown any error by the court. Finally, Roussel claims that there is insufficient evidence in the record to support his convictions. But viewing the evidence in the light most favorable to the State, we conclude that there is adequate evidence in the record. Because we reject Roussel's claims, we affirm the judgment of the superior court.

### Background Facts and Proceedings

On January 15, 2003, Roussel visited the office of Dr. Sean Taylor, ostensibly seeking treatment for back pain. Roussel completed a lengthy questionnaire and returned to Dr. Taylor's office on January 21, 2003. Roussel asked Dr. Taylor to prescribe Oxycontin and Methadone for his back condition, but Dr. Taylor gave Roussel a prescription for Ultracet and Bextra because he was concerned about prescribing Oxycontin, a narcotic.

That same day, Roussel presented a prescription for Oxycontin and Xanax (ostensibly signed by Dr. Taylor) at the Wal–Mart pharmacy on A Street in Anchorage. ("Oxycontin" was misspelled "Oxycotton" on the prescription.) The pharmacist filled the prescription.

Two days later, January 23, 2003, Roussel presented another prescription for Oxycontin and Xanax (again ostensibly signed by Dr. Taylor) at the Wal–Mart pharmacy on Dimond Boulevard in Anchorage. Yunga Vercelline, a pharmacist working at the Dimond Wal–Mart pharmacy, attempted to contact Dr. Taylor's office to verify the prescription, but the office was closed.

The next day that Dr. Taylor's office was open, Vercelline spoke with a nurse in the office and was told that Dr. Taylor had not prescribed any Oxycontin for Roussel. Dr.

---

1. AS 11.71.040(a).

Taylor contacted the Anchorage Police Department and reported the discrepancy.

Anchorage Police Officer Arazeli Jones contacted Roussel at his residence. After Officer Jones had advised Roussel of his *Miranda* rights,[2] Roussel waived his rights and admitted that he had taken blank prescription forms from Dr. Taylor's office and had written false prescriptions for Oxycontin and Xanax. Roussel also admitted he had taken the forged prescriptions to the Wal–Mart pharmacies and had presented the false prescriptions to obtain drugs. Officer Jones arrested Roussel.

The grand jury indicted Roussel on four counts of fourth-degree misconduct involving a controlled substance. Count I charged Roussel with obtaining possession of Oxycontin by fraud when he filled the false prescription at the A Street Wal–Mart.[3] Count II charged Roussel with obtaining possession of Xanax by fraud at the same time.[4] Count III charged Roussel with possessing 25 or more tablets of Xanax.[5] Count IV charged Roussel with possessing Oxycontin.[6]

The State also filed an information charging Roussel with four misdemeanor counts of attempted fourth-degree misconduct involving a controlled substance arising out of Roussel's presentation of the false prescriptions at the Dimond Wal–Mart. Two of those counts were based on attempted possession of any amount of Oxycontin[7] and 25 or more tablets of Xanax.[8] Two were based on attempted possession of Oxycontin and Xanax by misrepresentation, fraud, forgery, deception or subterfuge.[9]

Superior Court Judge Larry D. Card dismissed Counts III and IV of the indictment when an evidentiary problem developed dur-ing trial. The jury convicted Roussel on the remaining six counts.

*Did the superior court plainly err by not granting a mistrial?*

As we noted above, Counts III and IV of the indictment charged Roussel with knowingly possessing Xanax and Oxycontin, respectively, on January 21, 2003. During opening statement, the prosecutor claimed that Roussel had illegally filled prescriptions for these two drugs at the A Street Wal–Mart. While questioning Anchorage Police Officer Roger Nelson, the prosecutor asked the officer to identify two pill containers that Officer Nelson had found in Roussel's bedroom after he had been arrested. In one container, the police found Xanax; in the other, Oxycontin.

The prosecutor moved to admit both containers. Roussel objected. Outside the presence of the jury, he pointed out that the containers were not dispensed by Wal–Mart but were filled at a Carrs pharmacy on January 26, 2003. (Thus, the location of the pharmacy and the date the prescriptions were filled differed from the evidence supporting Counts III and IV of the indictment.)

██ Roussel argued that there was a variance problem and Judge Card provided the prosecutor with a copy of *Michael v. State*.[10] In *Michael*, the Alaska Supreme Court reversed Michael's conviction because there was a prejudicial variance between the crime charged in the indictment and the crime for which the trial jury convicted Michael.[11]

But the case never proceeded to verdict on Counts III and IV. Instead, the prosecutor conceded that the State had a problem presenting evidence on Counts III and IV. He admitted that he could not "go forward on

---

**2.** *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** AS 11.71.040(a)(9).

**4.** *Id.*

**5.** AS 11.71.040(a)(3)(B).

**6.** AS 11.71.040(a)(3)(A).

**7.** AS 11.71.040(a)(3)(A); AS 11.31.100(d)(5); AS 11.71.040(d).

**8.** AS 11.71.040(a)(3)(B); AS 11.31.100(d)(5); AS 11.71.040(d).

**9.** AS 11.71.140(a)(9); AS 11.31.100(d)(5); AS 11.71.040(d).

**10.** 805 P.2d 371 (Alaska 1991).

**11.** *Id.* at 373–74.

Counts III and IV." Judge Card asked the prosecutor if those two counts would have to be dismissed. The prosecutor agreed they would.

Judge Card told counsel that he would tell the jury that he had sustained Roussel's objections and that the counts were dismissed. Roussel was apparently satisfied with the result, because he did not request any additional relief before Judge Card informed the jury that he had sustained Roussel's objection and had dismissed Counts III and IV. Judge Card instructed the jury that those counts were "not to be considered as part of this case."

Roussel now argues that Judge Card should have granted a mistrial on all the remaining counts. He claims that the admission of "the irrelevant and prejudicial evidence of [the] prescription bottles" negated his defense. He also argues that the jury was prejudiced by hearing evidence "of other invalid prescriptions."

But Roussel did not ask for any additional relief after Judge Card sustained his objections and dismissed the two counts after the State conceded that it could not proceed on those two counts. Indeed, with apparent relish, Roussel's attorney announced that he would contend that the police investigation was "incompetence with a capital I."

Roussel acknowledges that he has to show plain error. That is, he must show that no competent judge would have believed that the problem that developed when the State tried to admit the prescription containers from Carrs could have been addressed by any solution other than granting a mistrial.

■ But we have warned trial judges, repeatedly, to be very cautious before ordering a mistrial that the defendant has not requested. Under the double jeopardy clauses, if a trial judge declares a mistrial sua sponte when there is no manifest necessity for the mistrial, the charges against the defendant must be dismissed.[12]

Here, Roussel prevented the State from admitting the prescription containers that the prosecutor apparently believed had been obtained from Wal–Mart. Roussel recognized the tactical advantage this mistake gave him in addition to the dismissal of Counts III and IV. The State did not have prescription containers with pills to admit into evidence that were directly connected to the charges in the indictment. Roussel was also in a position to argue that the police investigation was flawed.

After Judge Card had sustained Roussel's objection and dismissed Counts III and IV, Roussel never asked for any additional relief. He did not then seek a mistrial on the remaining counts. He did not ask Judge Card to give any additional instruction to the jury. We conclude that Roussel has not shown plain error.

*Did the superior court abuse its discretion when it failed to grant Roussel's mistrial motion?*

During the State's case, Yunga Vercelline, the pharmacist at the Dimond Wal–Mart, testified that she had been working on January 23rd when Roussel presented prescriptions at the Wal–Mart pharmacy on Dimond Boulevard. Vercelline stated that she was standing next to a co-worker when Roussel gave the co-worker his name and contact information. Vercelline testified that she recognized Roussel's name from when she had worked at another Wal–Mart store. Vercelline testified that hearing Roussel's name:

> [k]ind of raised a red flag, and I sort of paid attention to what was going on next to me. When Mr. Roussel was walking away I had—I looked over and I discussed the prescriptions with the—with the other pharmacist. I said we have known to have had problems in the past with this patient.

Roussel immediately objected and Judge Card sustained the objection. Roussel asked the court to strike the testimony. Judge Card struck the testimony and immediately instructed the jury: "Ladies and gentlemen, you should use that information for no pur-

---

**12.** *See Cook v. State,* 36 P.3d 710, 729 (Alaska App.2001); *Riney v. State,* 935 P.2d 828, 838–39 (Alaska App.1997); *Nelson v. State,* 874 P.2d 298, 308 (Alaska App.1994); *March v. State,* 859 P.2d 714, 717 (Alaska App.1993).

pose at all. Do you understand? It has no bearing on this case."

The State rested its case shortly after this testimony. Roussel's attorney informed the court that Roussel would not be presenting a case. Roussel moved for a mistrial because of Vercelline's testimony that the pharmacy had had problems with Roussel in the past.

Judge Card denied Roussel's motion for a mistrial because he felt that Vercelline's testimony did not necessarily communicate to the jury that Roussel had presented false prescriptions in the past. Judge Card explained:

> [Vercelline] said we've had some problems in the past with Mr. Roussel. She didn't indicate what kind of problems she's had, and I know she's a pharmac[ist] but it doesn't mean that she's had bad prescriptions. She didn't say that. She just said we've had some problems. She did not specify ... [T]here may be some other problems. I don't know whether it's problems with billing, I don't know whether it's problems with personalities, I really don't know. But it was very vague, and I'm willing to give an instruction. I'm not willing to grant a mistrial on the basis of that information.

Judge Card also found that there was no need for a mistrial because Roussel had elicited testimony from a previous witness that Roussel had presented valid prescriptions in the past. Judge Card offered to give a cautionary instruction to the jury, but Roussel asked that one not be given.

On appeal, Roussel argues that the trial court erred by refusing to grant a mistrial. Roussel claims that the only plausible conclusion to draw from the testimony was that Roussel had presented invalid prescriptions in the past.

 We review a trial judge's decision on a motion for a mistrial for abuse of discretion.[13] We will reverse the trial judge's decision only when, after reviewing the whole

record, we are left with a definite and firm conviction that the trial court erred in its ruling.[14]

 Here, the witness offered a comment that she knew of past problems with Roussel without specifying the nature of the problems. Judge Card sustained Roussel's objection, ordered the evidence stricken, and gave the jury an immediate cautionary instruction. While it is possible that the jury might infer that Roussel's past problems involved prescriptions, Judge Card acted immediately and told the jury to disregard the testimony. Roussel did not ask for any additional instruction from Judge Card, who was in the best position to analyze the potential impact of the testimony that he had stricken. After our review of the record, we are not able to say that Judge Card abused his discretion when he denied a mistrial.

### Roussel has not shown cumulative error

 In addition to his other arguments, Roussel claims that we should reverse his convictions because of the cumulative impact of Judge Card's errors. Cumulative error requires reversal only when the impact of errors at trial is so prejudicial that the defendant was deprived of a fair trial, even if each individual error was harmless.[15] But we have rejected each claim of error presented by Roussel. Therefore, his claim of cumulative error fails.

### Sufficient evidence supports the convictions

At the close of evidence, Roussel moved for a judgment of acquittal on Counts I and II on the ground that the State had not presented any physical evidence to prove that Roussel had obtained possession of Oxycontin or Xanax, as charged in the indictment. Roussel also moved that the State be forced to choose two of Counts V through VIII on the ground that those counts were

---

**13.** *See Walker v. State,* 652 P.2d 88, 92 (Alaska 1982); *Roth v. State,* 626 P.2d 583, 585 (Alaska App.1981).

**14.** *See Hamilton v. State,* 59 P.3d 760, 769 (Alaska App.2002).

**15.** *See Drumbarger v. State,* 716 P.2d 6, 16 (Alaska App.1986).

duplicate. Roussel argued that Counts V and VIII were duplicate because those counts alleged knowing possession of Xanax and obtaining possession of Xanax through fraud, etc., respectively. Roussel argued that Counts VI and VII were duplicate because those counts alleged knowing possession of Oxycontin and obtaining possession of Oxycontin through fraud. Judge Card denied Roussel's motion.

When we review the denial of a motion for a judgment of acquittal, we view the evidence presented at trial and the reasonable inferences from the evidence in the light most favorable to the State. Viewing the evidence in this manner, we must determine whether a fair-minded juror exercising reasonable judgment could conclude that the State met its burden of proving guilt beyond a reasonable doubt.[16]

Roussel argues that there was insufficient evidence to support his conviction because the State did not present any pills into evidence, because the State did not present evidence as to how Roussel could have obtained blank prescription pads from Dr. Taylor's office, and because the State did not present video evidence that he was the person that presented the false prescriptions. But Roussel's arguments imply that the State must prove each element of its charge by direct evidence. This implication is wrong. We apply the same standard of review whether the conviction is based on circumstantial evidence or direct evidence.[17]

The State presented sufficient evidence that Roussel committed the crimes with which he was charged. Dr. Taylor testified that he did not prescribe Oxycontin or Xanax to Roussel and that he did not give Roussel blank prescription pads. In addition, Tamara Spek, a pharmacist at the A Street Wal–Mart, testified that she filled a prescription purportedly endorsed by Dr. Taylor that was presented by Roussel for Oxycontin and Xanax on January 21, 2003. Spek identified Roussel in the courtroom as the man who had presented those prescriptions. Spek stated that she was familiar with Dr. Taylor's signature, and that, although she did not look closely at the signature on the day she filled the prescriptions in question, the signature was not that of Dr. Taylor.

The State also presented Yunga Vercelline's testimony. Vercelline testified that she phoned Dr. Taylor's office to verify that Dr. Taylor prescribed Oxycontin for Roussel. Vercelline testified that she had spoken to a nurse at Dr. Taylor's office and that the nurse had told her that no one from that office had prescribed Oxycontin for Roussel. Vercelline identified Roussel as the person who had presented the false prescriptions to her pharmacy.

The State also called Anchorage Police Officers Arazeli Jones and David Koch, who testified that Roussel admitted that he had taken a prescription pad from Dr. Taylor's office, forged Dr. Taylor's signature, and presented the prescriptions to pharmacies to obtain drugs. Although the police did not tape record Roussel's statement admitting that he had committed the crimes, both police officers present at Roussel's residence testified that Roussel had admitted to the crimes.

Viewing the evidence in the light most favorable to the State, we conclude that fair-minded jurors using reasonable judgment could find that the State had established Roussel's guilt beyond a reasonable doubt.[18] Therefore, we reject Roussel's insufficient evidence claim.

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

**16.** *See Dorman v. State,* 622 P.2d 448, 453 (Alaska 1981); *Deal v. State,* 657 P.2d 404, 405 (Alaska App.1983).

**17.** *Ashley v. State,* 6 P.3d at 738, 743 (Alaska App.2000).

**18.** *See Dorman,* 622 P.2d at 453; *Deal,* 657 P.2d at 405.