Andrew F. ABYO, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9428.

Court of Appeals of Alaska.

Aug. 10, 2007.

---

Stephanie Patel, Law Offices of Dan Allan, Anchorage, for the Appellant.

Richard K. Allen, Assistant District Attorney, Roman J. Kalytiak, District Attorney, Palmer, and David W. Márquez, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

STEWART, Judge.

Andrew F. Abyo was convicted of driving while under the influence (DUI). He argues that District Court Judge John Wolfe improperly denied his request for an evidentiary hearing, violated the confrontation clause of the Sixth Amendment to the United States Constitution by admitting verification of calibration documents for the DataMaster breathalyzer without subjecting the author of the documents to cross-examination, and erred in denying his motion for judgment of acquittal.

We agree that Judge Wolfe improperly denied Abyo's request for an evidentiary hearing on whether the officer had probable cause to arrest Abyo. Accordingly, we remand for an evidentiary hearing on that issue. But Judge Wolfe did not violate the confrontation clause by admitting the verification of calibration documents without subjecting the author to cross-examination-verification of calibration reports are non-testimonial documents. And Judge Wolfe did not err in denying Abyo's motion for judgment of acquittal because the jury could reasonably have relied in convicting Abyo on the arresting officer's testimony that Abyo was driving while under the influence and the DataMaster test showing that Abyo had a blood alcohol level of 0.125 percent.

*Facts and proceedings*

On October 2, 2004, at approximately 3:48 a.m., Palmer Police Officer Donna Anthony stopped Abyo for driving with a broken tail-light. When she approached Abyo, she noticed that his eyes were bloodshot and watery and that a strong odor of alcohol was coming from his person or his breath. Abyo admitted that he drank two beers at the Gaslight Lounge in Anchorage and that he and his passengers were returning from a "liquor run" to Palmer.

Officer Anthony suspected that Abyo was under the influence of alcohol and asked him to perform several standardized field sobriety tests, including a horizontal gaze nystagmus (HGN) test, a walk-and-turn test, a one-legged-stand test, and alphabet and number tests.

Based on the results of these tests, Officer Anthony believed Abyo was under the influence of alcohol. She asked him to submit to a portable breath test, which indicated the presence of alcohol. She then arrested him and took him to the Palmer police station to conduct a DataMaster test. Abyo's Data-Master test, completed at 4:41 a.m., showed that Abyo had a blood alcohol level of 0.125 percent.

At trial, Officer Anthony testified about the results of Abyo's field sobriety tests. She testified that on the HGN test, both of Abyo's eyes showed nystagmus—rapid involuntary rhythmic eye movement—on all six "clues," indicating the influence of alcohol. She testified that on the walk-and-turn test, Abyo had trouble putting his right foot in front of his left foot, had to raise his arms to keep his balance, and did not follow the instructions to count out loud while walking, scoring three of a possible nine points. She testified that on the one-legged-stand test (counting one to thirty while standing on one leg), he had to raise his arms to keep his balance, put his foot down more than three times, and was swaying. (Once a defendant puts his foot down three times, he fails the test.) She testified that on the alphabet test (reciting E to P), Abyo initially forgot the H but then restarted and correctly completed the test. And finally, she testified that on the number test (counting backward from 69 to 54), Abyo repeated 65 and 64 but successfully completed the test.

After Officer Anthony testified about the field sobriety tests, the State played a video of the traffic stop. After viewing the video, Officer Anthony stated that part of her testimony was incorrect: Abyo did not sway, hop, lift his arms, or stop and start counting. She eventually conceded that Abyo's only failures on the field sobriety test were on the HGN test. And Officer Anthony admitted that a suspect's performance on the HGN test can be affected by overhead lights or other factors unrelated to alcohol consumption.

Overall, Officer Anthony agreed that her police report and testimony were inaccurate in describing the field sobriety tests. At the conclusion of the State's case, Abyo moved for a judgment of acquittal. The court denied the motion, holding that the evidence was sufficient to allow reasonable jurors to find Abyo guilty. The jury found Abyo guilty of driving while under the influence.[1]

*Discussion*

*Why we find the court erred in refusing to hold an evidentiary hearing on Abyo's second suppression motion*

■ Abyo filed three pre-trial motions to suppress the evidence, the first based on lack of probable cause to stop him for a traffic violation, the second based on lack of probable cause to arrest him for driving while under the influence, and the third based on *Miranda*[2] violations. Judge Wolfe held an evidentiary hearing on March 11, 2005, at which Abyo asked to address all three motions. Judge Wolfe indicated that he was only prepared to rule on the first motion, but he allowed the parties to present evidence on all three motions.

On March 21, 2005, Abyo requested an evidentiary hearing on his second suppression motion. The court denied the request under Alaska Criminal Rule 42(b)(2) because Abyo had not presented evidence of a material factual dispute. But the court stated that "[t]his motion can be reurged if after receipt of discovery a dispute of material fact is found to exist."

On April 21, 2005, Abyo filed a renewed request for a hearing. The motion included an affidavit by Abyo's counsel that stated she had reviewed the video recording of the field sobriety tests and that it contradicted the statements of the arresting officer and showed there was no probable cause for the arrest. The court did not respond to the request for a hearing; instead the court set the matter for a trial call on May 27, 2005.

Abyo then filed another "renewed request" for an evidentiary hearing, which the court treated as a motion for reconsideration under Criminal Rule 42(k). Before denying the motion, the court observed that it was procedurally defective because Abyo had not specified the ground on which he was seeking reconsideration, or shown good cause why the facts he advanced in his affidavit were not included in his original motion.

The court nevertheless reached the merits of Abyo's motion, ruling that an evidentiary hearing was not warranted because there were no material discrepancies between the officer's affidavit in support of probable cause and the affidavit attached to Abyo's motion for reconsideration. The court found that, even accepting as true the assertions of Abyo's counsel that the police video showed that Abyo had not staggered, stumbled, been off balance, or slurred his speech, the officer's affidavit was sufficient to establish probable cause for his arrest. The court noted that Abyo had not directly contradicted the officer's assertions that Abyo smelled of alcohol, had bloodshot, watery eyes, failed several field sobriety tests, admitted to drinking and being on a "liquor run," and registered 0.155 percent blood alcohol on a portable breath test.

On appeal, Abyo argues that the court erred in concluding that there were no material factual disputes and in refusing to hold a hearing on his suppression motion.

Criminal Rule 42(e) states that "[i]f material issues of fact are not presented in the pleadings, the court need not hold an eviden-

---

1. AS 28.35.030(a).

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

tiary hearing." In *Selig v. State*,[3] we explained the procedure for establishing if there are disputes of material fact that warrant an evidentiary hearing:

> [W]here the claim is made that a warrantless arrest was not supported by probable cause, the defendant should be permitted to allege this fact on information and belief in reliance on specified materials he receives through discovery. Once the defendant has filed his affidavits and supporting legal memoranda, the state is obligated to respond by filing affidavits setting out its version of the facts. When a comparison of the affidavits in support of and in opposition to the motion establishes disputed issues of material fact, the trial court should schedule an evidentiary hearing to resolve those issues sufficiently in advance of trial to avoid delay. The trial court can then make the specific findings of fact required by Criminal Rule 12(d).[4]

In *Boggess v. State*,[5] we stated that "conflicting affidavits provide no basis for evaluating the relative credibility of their makers. For this reason, issues of credibility cannot normally be decided based on a review of affidavits; when conflicting facts are set forth in competing affidavits, an evidentiary hearing will ordinarily be required."[6]

In this case, Abyo did not include a statement of facts in his initial request for a hearing. In his renewed request (which the court treated as a motion for reconsideration), Abyo's counsel stated as follows:

> I have reviewed the video recording provided by the State in this case, which includes the field sobriety tests, and as a result of this review I believe the video recording is evidence of a lack of objective facts sufficient to establish probable cause for the arrest of defendant in this case (i.e. a lack of the usual indicia, including staggering, stumbling, being off balance, slurred speech, lack of awareness, etc.), and that such video contradicts other evidence of statements made by the arresting

officer to support probable cause.... I believe that a reasonable person would or could conclude that the entire credibility of the arresting officer is undermined by the discrepancy between the objective evidence on the video and written statements made by the arresting officer.

Judge Wolfe found "no discrepancy" between the two affidavits and found that "[t]he facts contained in the officer's affidavit establish probable cause for the arrest, even assuming those claimed by the defense were all true as well." Apparently, Judge Wolfe refused to hold an evidentiary hearing because Abyo failed to explain which parts of Officer Anthony's affidavit the video contradicted.

Although it is true that Abyo's counsel did not clearly explain what parts of Officer Anthony's affidavit the video contradicted, we find that there was a sufficient factual dispute to warrant an evidentiary hearing in this case. Abyo's counsel stated that the video contradicted statements made by Officer Anthony to support probable cause and that this undermined the overall credibility of the officer. If Officer Anthony had been confronted with the video at an evidentiary hearing, she might have admitted, as she did at trial, that she made mistakes in her affidavit and that she might have written her report based on the facts of a different DUI investigation. We find that Judge Wolfe erred in failing to hold an evidentiary hearing. We therefore remand the case for an evidentiary hearing on whether Officer Anthony had probable cause to arrest Abyo.

*Why we find the court did not err in admitting the verification of calibration documents*

█ At trial, the State attempted to introduce documents to verify that the DataMaster breath test machine was properly calibrated. Abyo objected, claiming that he had a right to cross-examine the author of the documents under *Crawford v. Washington*.[7]

---

**3.** 750 P.2d 834 (Alaska App.1988).

**4.** *Id.* at 839 (citations omitted). *See also Davis v. State*, 766 P.2d 41, 43 (Alaska App.1988).

**5.** 783 P.2d 1173 (Alaska App.1989).

**6.** *Id.* at 1180.

**7.** 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

The State responded that the documents fell within the business records exception to the hearsay rule and therefore it was unnecessary to subject the author to cross-examination. The court overruled Abyo's objection. Officer Anthony then testified that the documents showed the DataMaster was successfully calibrated on August 18, 2004, and again on October 7, 2004, and therefore was presumed to be properly operating on October 2, 2004, the date of Abyo's test.[8]

The Sixth Amendment to the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." In *Crawford,* the United States Supreme Court reaffirmed that this clause applies to both in-court and out-of-court statements and that it applies regardless of the rules of evidence in place at the time.[9] If the statement is "testimonial," it cannot be admitted at trial unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant about the statement.[10] The Supreme Court did not explicitly define the term "testimonial" in *Crawford,* but it did state that business records are, by their nature, not testimonial.[11]

Before *Crawford,* this court and our supreme court held that verification of calibra-tion reports were admissible without subjecting the author to cross-examination, but we have not decided the issue since then.[12] We therefore must decide whether verification of calibration reports are testimonial under *Crawford.*

In Abyo's case, the court admitted the verification of calibration documents as public records—not as business records, which the Supreme Court stated were nontestimonial in *Crawford.* But most courts have held that verification of calibration documents— whether business records or public records— are nontestimonial, and that courts do not violate the confrontation clause by allowing them to be introduced without subjecting the author to cross-examination.[13]

For example, in *Bohsancurt v. Eisenberg,*[14] the Arizona Court of Appeals found that verification of calibration documents were both public records and business records and that, under *Crawford,* they were nontestimonial.[15] The court relied on the fact that the calibration documents were mandated by administrative rules, were created whether or not the machine was ever used, did not have any relationship to any specific case or defendant, and were not created to document the specific facts of a case.[16]

Courts have continued to hold that these documents are nontestimonial even after the

**8.** *See* AS 28.35.033(d) (establishing the presumption that a person is intoxicated if the person's breath test result is above the legal limit and the breath test was performed according to methods approved by the Department of Public Safety); 13 AAC 63.100(c) (requiring that the accuracy of the calibration of a breath test instrument be verified at intervals not to exceed sixty days).

**9.** *Crawford,* 541 U.S. at 50–51, 124 S.Ct. at 1364.

**10.** *Id.,* 541 U.S. at 53–54, 124 S.Ct. at 1365.

**11.** *Id.,* 541 U.S. at 56, 124 S.Ct. at 1367. *See also* A.R.E. 803(6).

**12.** *See Wester v. State,* 528 P.2d 1179, 1183 (Alaska 1974) (holding that "ampule certification and breathalyzer calibration need not be the subject of personal testimony and are clearly admissible under the official records exception to the hearsay rule"); *State v. Huggins,* 659 P.2d 613, 615–17 (Alaska App.1982) (holding that a certificate of calibration is admissible under the public records exception and its admission does not violate a defendant's Sixth Amendment right to confron-tation); *Byrne v. State,* 654 P.2d 795, 796–97 (Alaska App.1982) (accord).

**13.** *See, e.g., Bohsancurt v. Eisenberg,* 212 Ariz. 182, 129 P.3d 471, 475–80 (Ct.App.2006); *Rackoff v. State,* 275 Ga.App. 737, 621 S.E.2d 841, 845 (2005); *Rembusch v. State,* 836 N.E.2d 979, 982 (Ind.Ct.App.2005); *State v. Carter,* 326 Mont. 427, 114 P.3d 1001, 1005–07 (2005); *State v. Godshalk,* 381 N.J.Super. 326, 885 A.2d 969, 973 (Law Div.2005); *State v. Dedman,* 136 N.M. 561, 102 P.3d 628, 636 (2004); *People v. Kanhai,* 8 Misc.3d 447, 797 N.Y.S.2d 870, 875 (Crim.Ct. 2005); *State v. Norman,* 203 Or.App. 1, 125 P.3d 15, 18–20 (2005); *Luginbyhl v. Commonwealth,* 46 Va.App. 460, 618 S.E.2d 347, 355 (2005). *But see Shiver v. State,* 900 So.2d 615, 618 (Fla. Dist.Ct.App.2005).

**14.** 212 Ariz. 182, 129 P.3d 471.

**15.** *Id.* at 477.

**16.** *Id.* at 479–80.

United States Supreme Court's decision in *Davis v. Washington,*[17] which held that statements made in the course of a police interrogation are testimonal if "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."[18] While verification of calibration reports are prepared in anticipation of criminal litigation in a general sense, courts have held that they are nontestimonial because they are not prepared in anticipation of litigation in a particular case.[19]

We agree. Verification of calibration reports are mandated by the administrative rules,[20] are created whether or not the Data-Master machine whose calibration is being verified is used,[21] and are not created in anticipation of litigation in a particular case. We therefore find that verification of calibration documents for breath test machines are nontestimonial and reaffirm that their introduction without cross-examination of the author does not implicate the confrontation clause. The court did not err in allowing the State to introduce the verification of calibration documents without subjecting the author to cross-examination.

*Why we find the court did not err in denying Abyo's motion for judgment of acquittal*

▪ Abyo also argues that the court erred in denying his motion for judgment of acquittal. In denying the motion, the court held that the evidence was sufficient to allow fair minded persons in the exercise of reasonable judgment to find Abyo guilty.[22]

▪ When we review the denial of a motion for judgment of acquittal, we view the evidence presented at trial and the reasonable inferences from that evidence in the light most favorable to the State.[23] Viewing the evidence in that light, we determine whether fair minded jurors exercising reasonable judgment could find the defendant guilty beyond a reasonable doubt.[24]

Essentially, Abyo claims that Officer Anthony's credibility was sufficiently undermined that no reasonable juror could believe any of her testimony. However, even after the confusion over the field sobriety tests, there was a great deal of Officer Anthony's testimony that she did not retract: Abyo's eyes were bloodshot and watery, there was a strong odor of alcohol coming from the car, Abyo failed the HGN test, Abyo admitted he had been drinking at the Gaslight Lounge in Anchorage and that he and his passengers were returning from a "liquor run," and Abyo's DataMaster test showed a breath alcohol level of 0.125 percent. It is the jury's job to determine the credibility of witnesses.[25] Because reasonable jurors could have believed Officer Anthony's remaining testimony and used this testimony to find Abyo guilty beyond a reasonable doubt, the court did not err in denying the motion for judgment of acquittal.

Abyo also argues that the jury could not rely on the DataMaster result because the August 18, 2004, verification of calibration report was not certified by the director of the State Breath Alcohol Testing Program until November 29, 2004—more than three months

**17.** —— U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

**18.** *Id.,* 126 S.Ct. at 2273–74.

**19.** *State v. Marshall,* 114 Hawai'i 396, 163 P.3d 199, 205 (Hawai'i App.2007); *Jarrell v. State,* 852 N.E.2d 1022, 1025–26 (Ind.App.2006); *State v. Fischer,* 272 Neb. 963, 726 N.W.2d 176, 182–83 (2007) (all discussing *Davis v. Washington* in holding that certifications were not testimonial).

**20.** *See* 13 AAC 63.100. *See also* AS 28.35.033(d).

**21.** 13 AAC 63.100(c).

**22.** *See* Alaska R.Crim. P. 29.

**23.** *Roussel v. State,* 115 P.3d 581, 586 (Alaska App.2005).

**24.** *Id.*

**25.** *Anthony v. State,* 521 P.2d 486, 492 (Alaska 1974). *See also Noble v. State,* 552 P.2d 142, 145 (Alaska 1976) (holding that inconsistencies in testimony "do not destroy the probative value of the testimony, but go instead to the credibility of the witness and the weight to be given his testimony"); *Daniels v. State,* 767 P.2d 1163, 1167 (Alaska App.1989) ("[T]he credibility of witnesses is exclusively a question for the jury and cannot properly be considered on appeal in determining the sufficiency of the evidence presented below.").

after the verification of calibration was performed and nearly two months after Abyo's DataMaster test.

The Alaska Administrative Code provides that, in order for a breath test to be considered valid:

> At intervals not to exceed 60 days, the accuracy of the calibration of a breath test instrument must be verified. The verification of calibration must be performed by the scientific director or by a qualified person designated by the scientific director. A written report of the verification of calibration shall be made by the person who performed that verification. That report shall be submitted to the scientific director, if the scientific director did not prepare it. Upon receipt of the written report or after preparing the written report, and if the report verifies that the calibration of the breath test instrument is accurate, the scientific director shall issue a certification for the breath test instrument. The certification is valid for 60 days after the day the verification of calibration was performed.[26]

This language does not require the scientific director to issue the certification within a certain amount of time after the verification of calibration is performed, and it does not state that DataMaster test results are only valid if they are performed after the scientific director issues the certification. Instead, in order for a breath test result to be presumed valid, a verification of calibration must be performed every sixty days, and, at some point, the scientific director must issue a certification for the breath test instrument.[27]

Here, the DataMaster was properly verified as calibrated on August 18, 2004, and the verification of that calibration was certified later by the scientific director. The jury was therefore justified in relying on any tests performed on that DataMaster within sixty days of August 18, 2004, including the October 2, 2004, test that showed Abyo had a blood alcohol level of 0.125 percent.

*Conclusion*

We REMAND this case to the district court for an evidentiary hearing on whether Officer Anthony had probable cause to arrest Abyo. Within ninety days, the district court shall transmit findings on that issue to this Court. The parties shall have twenty days to submit simultaneous memoranda addressing the district court's findings. We reject Abyo's other claims of error. We retain jurisdiction.

---

**26.** 13 AAC 63.100(c). *See also* AS 28.35.033(d).

