NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter*. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

ALVIN E. WASSILLIE,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-11080
Trial Court No. 3AN-10-1901 CR

O P I N I O N

No. 2490 — February 5, 2016

Appeal from the Superior Court, Third Judicial District, Anchorage, Michael L. Wolverton, Judge.

Appearances: Josie Garton, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge MANNHEIMER.

Alvin E. Wassillie was serving a felony sentence at a halfway house in Anchorage when he walked away from the facility without authorization. A jury

_____

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

convicted him of escape in second degree.[1]  On appeal, Wassillie asserts the superior court should have dismissed the indictment against him because the State presented inadmissible hearsay to the grand jury.  Wassillie also argues the superior court erred by allowing the State to later amend this indictment.

With regard to Wassillie's hearsay argument, we conclude that the hearsay Wassillie complains of was properly admitted because it fell within the business records exception to the hearsay rule.  And with regard to the amendment of the indictment, Wassillie did not object when explicitly given the opportunity, and we find no plain error.

*Underlying facts*

Wassillie was in the custody of the Department of Corrections, serving a sentence for a felony conviction.  In early 2010, the Department placed Wassillie on pre-release furlough status, and they transferred him to the Parkview Center — a halfway house run by a private corporation under contract with the Department.

On February 19, 2010, Wassillie left the Parkview Center on a pass for the purpose of searching for a job.  He returned a few hours later.

Around the time of Wassillie's return, members of the Parkview Center staff were notified that someone had brought vodka into the building (in violation of the facility's rules).  After an investigation, the staff concluded that Wassillie had tossed the vodka into the building through an open window.  One of the staff contacted Wassillie and told him to wait in the lobby.  This staff member then called the Department of Corrections to have an officer come and take Wassillie to jail.

---

[1]   AS 11.56.310(a)(1)(B).

But before the corrections officer arrived, one of the other Parkview inmates notified the staff that Wassillie had left the building. Staff members checked Wassillie's room, they paged him twice, they looked throughout the building, and they conducted a head count of the residents — but they were unable to locate Wassillie. By examining a recording made by a security camera, they discovered that Wassillie had walked out of the building through the front door.

The police located and arrested Wassillie later that night, approximately three miles from the Parkview Center.

Wassillie was initially indicted for second-degree escape as that crime was defined by the pre-2012 version of AS 11.56.310(a)(1)(A) — that is, under the theory that Wassillie had unlawfully removed himself from a correctional facility while under official detention. The jury at Wassillie's first trial was unable to reach a verdict on this charge, and the court declared a mistrial.

After his first trial, Wassillie filed a motion to dismiss the indictment on two grounds: first, that the State had presented inadmissible hearsay evidence to the grand jury, and second, that the Parkview Center did not qualify as a "correctional facility". The superior court rejected both of these arguments.

Nevertheless, prior to Wassillie's second trial, the State filed a motion to amend the indictment — by dropping the "correctional facility" theory of prosecution and instead charging Wassillie with second-degree escape under the clause of the statute that forbade removing oneself "from official detention for a felony". [2] When the superior court asked Wassillie's attorney for his position on the State's motion, the defense attorney did not oppose it, so the superior court amended the indictment as the State requested.

---

[2]   AS 11.56.310(a)(1)(B).

At Wassillie's second trial, the jury found Wassillie guilty of second-degree escape under this amended theory.

Wassillie now appeals his conviction.

*The State did not introduce inadmissible hearsay at the grand jury*

Wassillie argues that the State relied on inadmissible hearsay testimony to establish that he left the Parkview Center without permission.

The State presented two witnesses to the grand jury: a probation officer named Chris Lyou, and the director of the Parkview Center, Robert Graber.

Lyou testified that Wassillie was serving a sentence for a felony offense, and that the Department of Corrections had placed him at a halfway house. Graber testified that this halfway house was the Parkview Center.

Graber also testified about Wassillie's unauthorized departure from the Parkview Center. Graber explained that the Parkview staff conducts a physical check of the Center's inmates every hour, to make sure that all the inmates who are supposed to be in the building are in fact present. If the staff learns that a person may be missing, they lock down the building and they conduct two head counts by physically searching the building.

Graber explained that it is the business practice of the Parkview Center to create an "incident report" whenever a person leaves the Center without authorization. Through Graber, the prosecutor introduced the incident report that documented Wassillie's unauthorized departure from the Parkview Center. This report was written by Parkview Center staff member Eric Dulany, and it described the actions that the staff took after Dulany was notified that Wassillie was missing.

Dulany did not testify at the grand jury. Instead, relying on this incident report, Graber described how the Parkview staff responded when they were informed that Wassillie had left the Center without permission, and how the staff ultimately determined that Wassillie had in fact walked away.

On appeal Wassillie argues this incident report was inadmissible hearsay because it was introduced for the truth of the matters asserted in it, and because the author of the report did not testify at the grand jury. But given Graber's testimony about the business practices of the Parkview Center, the incident report was clearly admissible under Alaska Evidence Rule 803(6) — the business records exception to the hearsay rule.

Evidence Rule 803(6) creates a hearsay exception for any "memorandum, report, record, or data compilation ... in any form" that describes "acts, events, conditions, opinions, or diagnoses" if three conditions are met:

- The record (or memorandum or report or data compilation) was made at or near the time of the occurrence;

- The record was made by, or was based on information transmitted by, a person with knowledge acquired of a regularly conducted activity of that business entity; and

- It was the regular practice of that business entity to make and keep that kind of record.

Evidence Rule 803(6) states that these foundational elements can be established "by the testimony of the [records] custodian or other qualified witness". In Wassillie's case, Graber (the director of the Parkview Center) testified about the business practices that the Center followed whenever the staff received a report that an inmate might be missing. One of these business practices was to create an incident report whenever an inmate did in fact leave the Center without permission.

(We note that the Center was also under a statutory duty to know the location of its inmates, to supervise them, and to immediately report "any violation of a condition set for the prisoner's conduct."[3])

Thus, the incident report relating to Wassillie's unauthorized departure from the Parkview Center was presumptively admissible under the business records hearsay exception.

We acknowledge that Evidence Rule 803(6) contains a provision stating that a business record should not be admitted (at least, not as hearsay) if "the source of [the] information or the method or circumstances of [the] preparation [of the record] indicate [a] lack of trustworthiness." But other than noting that the incident report refers to hearsay statements of staff members and another Parkview resident, Wassillie has not suggested that there is anything about the content of the incident report, or the method of its preparation, to indicate a lack of trustworthiness.

Wassillie points out that the Commentary to Alaska Evidence Rule 803(6) states that business records are presumed to be accurate only if the record is made when the observer or participant "is acting routinely".[4] Wassillie argues that no incident report relating to an escape from the Parkview Center can satisfy this test, because escapes from the Center are unexpected rather than routine.

This argument is based on a misreading of the rule and the commentary. The rule does not require that the *occurrence* be routine. Rather, the rule requires that the *making of the record* be routine — *i.e.*, that the business practices of that entity call upon its employees to accurately report and record that kind of occurrence.

---

[3] *See* AS 33.30.111(c)(2) and (c)(4).

[4] Commentary to Alaska Evidence Rule 803(6), third paragraph.

Wassillie also contends that the incident report relating to his escape was prepared "in anticipation of litigation", and therefore was not admissible.

Often times, when a business entity establishes an internal rule or procedure requiring its employees to keep records of a certain type of occurrence, one of the business entity's motivations for establishing this internal rule or procedure is that the business entity anticipates that this type of occurrence may give rise to litigation. But this is not what courts mean when they speak of business records prepared "in anticipation of litigation". Rather, this phrase refers to records that are *not* prepared as a matter of course, under established internal rules or procedures, but rather are prepared specially in response to a particular occurrence, because the business entity anticipates that litigation will arise from that occurrence.

As *McCormick on Evidence* explains, the business record exception does not cover reports prepared by a business entity's employees "where the only function that the report serves is to assist in litigation or [in] preparation [for litigation]" — because, in such circumstances, "many of the normal checks upon the accuracy of business records are not operative."[5]

For instance, in *Abyo v. State*, 166 P.3d 55, 59-60 (Alaska App. 2007), we were asked to decide whether the business records or public records exception applied to the Department of Public Safety's reports verifying the calibration of the breath test machines used throughout this State to test DUI arrestees. We acknowledged that these "verification of calibration" reports are prepared "in anticipation of criminal litigation

---

[5]   Kenneth S. Broun *et alia*, *McCormick on Evidence* (7th ed. 2013), § 288, Vol. 2, p. 440 n. 31.

in a general sense". [6] But we held that these reports still fell within the exception because the reports are not prepared "in anticipation of litigation *in a particular case*." [7]

This same reasoning applies to the Parkview Center's incident reports relating to inmate escapes. Even though one of Parkview's motives in establishing the reporting requirement may have been to better its position if any litigation were to arise from an escape, the report in this case — the report relating to Wassillie's escape — was not specially created in anticipation of litigation arising from Wassillie's particular escape. Rather, the report was created because, under the Parkview Center's business procedures, its employees are required to prepare an incident report whenever *any inmate* leaves without permission, whether or not there is any prospect of litigation.

Accordingly, the incident report in Wassillie's case was not prepared "in anticipation of litigation" as that phrase is understood in this context.

Wassillie also argues that the Parkview Center's incident report does not satisfy the requirements of the public records hearsay exception, Evidence Rule 803(8). Based on this purported failure to satisfy the public records exception, Wassillie then argues that the incident report necessarily fails to satisfy the requirements of the business records exception.

In *Wilson v. State*, 756 P.2d 307, 312-13 (Alaska App. 1988), we expressly rejected the argument that a business record must also satisfy the requirements of the public records exception. Our decision in *Wilson* controls this issue.

For all of these reasons, we conclude that the incident report relating to Wassillie's escape from the Parkview Center was admissible under the business records

---

[6]   *Abyo*, 166 P.3d at 60.

[7]   *Ibid*.

exception to the hearsay rule. The superior court therefore properly denied Wassillie's motion to dismiss the indictment on this basis.

Although we reach this conclusion, we acknowledge that Wassillie's hearsay objection was correct with regard to a small portion of the incident report. The report recites that one of the Parkview inmates told the Parkview staff that Wassillie had thrown a bottle of vodka into his room in an attempt to get him in trouble. The report also identifies this same inmate as the one who initially reported that Wassillie had left the Center through the front door.

This information came from an inmate who (unlike members of the Parkview Center staff) was under no business duty to honestly or accurately report the activities of other inmates. Thus, the inmate's statements to the Parkview staff did not fall within the business records exception, and those statements were not admissible to prove the truth of the matters asserted. The inmate's statements were admissible only for the limited purpose of showing that the inmate made these statements to the Parkview staff — thus causing the staff to initiate their procedures for ascertaining whether Wassillie had indeed left the Center without permission.

Technically, then, the grand jurors should have been instructed that when they considered the incident report, they could not consider the report's description of the inmate's statements as proof of the matters asserted by the inmate, but only as evidence that the inmate made these statements to the Parkview staff. But there is essentially no possibility that this error influenced the grand jury's decision to indict Wassillie for escape.

As we explained toward the beginning of this opinion, Wassillie was initially charged with second-degree escape under the provisions of former AS 11.56.310(a)(1)(A) — *i.e.*, under the theory that he unlawfully removed himself from a correctional facility.

Then, following the mistrial on this charge, the State filed a motion to amend the indictment by charging Wassillie under a different subsection of the second-degree escape statute — this time, under the theory that Wassillie unlawfully removed himself "from official detention for a felony".

When the superior court asked Wassillie's attorney if he took a position on the State's request to amend the indictment, the defense attorney told the court that he "[did not] see a basis to object" to the proposed amendment of the charge.

At the same time, Wassillie's attorney indicated that the proposed amendment of the indictment would probably not affect Wassillie's defense to the escape charge. The defense attorney told the court that he intended to argue that Wassillie *was* authorized to leave the Parkview Center — that he had a pass that allowed him to be physically absent from the Center, and that he was exercising that privilege when he left the Center on the day in question.

After hearing the defense attorney's position on these matters, the superior court granted the State's motion to amend the indictment.

Now, on appeal, Wassillie argues that the superior court committed error by allowing the State to amend the indictment. He asserts that if the State wanted to take him to trial on a different theory, the State was required to return to the grand jury and obtain a new indictment on that theory.

Wassillie has waived this argument. Alaska Criminal Rule 12(b)(1)-(2) declares that all "[d]efenses and objections based on defects in the institution of the prosecution" or based on "defects in the indictment" must be raised before trial. And Rule 12(e) declares that a defendant's failure to raise these defenses or objections before trial (or before any pre-trial deadline set by the court) constitutes a waiver of the defense or objection.

For these reasons, Wassillie has waived his right to attack the amendment of the indictment in this appeal.

Nor does the record show plain error. Wassillie's attorney affirmatively told the superior court that he had no basis for objecting to the proposed amendment of the indictment, and the defense attorney further implied that the amendment of the indictment would, in any event, have little effect on Wassillie's planned defense to the charge. Under both the State's initial theory and the State's amended theory, the State was required to prove that Wassillie's departure from the Parkview Center was unauthorized — and the defense attorney told the court that Wassillie was going to assert that he *was* authorized to leave the Center (because he had a pass).

*Conclusion*

The judgement of the superior court is AFFIRMED.